[No. 50494–6. En Banc. August 16, 1984.]

UNITED PARCEL SERVICE, INC., *Appellant,* v. THE DEPARTMENT OF REVENUE, *Respondent.*

*Perkins, Coie, Stone, Olsen & Williams* and *John H. Binns, Jr.* (*Schnader, Harrison, Segal & Lewis, Ralph S. Snyder,* and *Richard D. Birns,* of counsel), for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Jeffrey D. Goltz, Assistant,* for respondent.

UTTER, J.—The issue before us is whether certain vehicles owned or leased by appellant are exempt, under RCW 82.12.0254, from the use tax imposed by RCW 82.12.020. We hold they are not.

Appellant United Parcel Service, Inc., seeks the benefit of a statutory exemption from the use tax imposed by RCW 82.12.020 on the use within this state, as a consumer, of tangible personal property. The exemption sought by UPS is that provided by RCW 82.12.0254 (formerly RCW 82.12-.030(4)), which provides:

> The provisions of this chapter shall not apply . . . in respect to the use by the holder of a carrier permit issued by the Interstate Commerce Commission of any motor vehicle or trailer whether owned by or leased with or without driver to the permit holder and used in substantial part in the normal and ordinary course of the user's business for transporting therein persons or property for hire across the boundaries of this state if the first use of which within this state is actual use in conducting interstate or foreign commerce . . .

UPS contends that it has been wrongfully denied the benefit of this exemption with respect to certain of its motor vehicles.

UPS operates a nationwide package delivery service on a "from and to all points" basis. In order to do this, UPS has developed an operating plan which works as follows: Packages to be picked up within an "operating area" are picked up at the shipper's address by a vehicle which UPS calls a "package delivery car" (the familiar brown van) and carried to an "operating center" which services that operating area. If a package is destined for an address within the same operating area, the package will remain at that center overnight and will be delivered on the next day by the same or another package delivery car operating out of that center.

When the package is destined for an address within another operating area, it is carried through a "feeder system". Sometimes, a transfer is made by a direct trip, but usually it is accomplished by passing the package through a centrally located "hub". A hub is a major dispatching and package–sorting center which services a large number of operating areas. At the hub, the package is sorted and then loaded onto another trailer for delivery to the operating center serving the consignee's address. Thus, packages are

transferred from their points of origin to the nearest hub. They are then transported from hub to hub across the country until they reach the hub nearest their destinations. From there they go to the proper operating center and finally to the destination itself.

Ordinarily, trips between operating centers and hubs and between different hubs are carried out by tractors and trailers rather than by package delivery cars. Such trips may be carried out in three different ways. The first is by the direct trip of a single tractor–trailer combination. The second is by loading trailers on railroad flatcars. This method requires two different tractors for the complete trip—one to deliver the trailer to the railroad and one to pick it up. In the third method, two tractor–trailers set out from different locations, meet somewhere between those locations, exchange trailers, and return to their starting points.

UPS uses three kinds of vehicles to provide its unitary interstate service: package delivery cars, tractors, and trailers. The package delivery cars, because they normally operate only within a single operating area, usually do not cross state lines. Tractors and trailers which transport packages between operating areas and hubs and between different hubs frequently do cross state lines on a regular basis, depending on the particular way in which they are used. As a general rule, UPS assigns new tractors to long hauls and older tractors to short–haul routes. In the state of Washington, tractor drivers document each state border crossing by filling out a "line–crossing card." All of the UPS vehicles—tractors, trailers, and delivery cars alike—are used for the same purpose: to carry packages from a point of pickup to a point of delivery.

Of the total number of packages handled by UPS in Washington, over 70 percent are either picked up in Washington for delivery outside the state or delivered within Washington having originated outside the state. Thus, less than 30 percent of the packages carried in Washington constitute intrastate commerce.

The dispute in this case centers on use taxes paid by UPS with respect to its "package delivery cars" operating within the state of Washington and 39 of its tractors. These vehicles either do not ever leave the state or do so only on fewer than 25 percent of their trips. The Department determined that these vehicles do not qualify for the use tax exemption because they were not used "in substantial part in the normal and ordinary course of the user's business for transporting therein persons or property for hire across the boundaries of this state . . ." RCW 82.12.0254. Taxes were assessed in this dispute for the period from April 1, 1975, through March 31, 1979. The use tax paid on the 39 tractors amounts to $39,357; the tax paid on the delivery vans is in the neighborhood of $150,000.

UPS's petition for refund of the taxes paid was denied by the Department of Revenue in 1980, and by the Board of Tax Appeals in a decision dated October 26, 1981. The Board ruled that the Department of Revenue had properly assessed use tax on UPS vehicles shown to have been operating exclusively within the state. It also concluded that, with respect to vehicles not operating exclusively within the state, the Department properly assessed an annual use tax on vehicles which had crossed the borders of this state on less than 25 percent of their trips taken in the normal course of UPS business during the tax year. Finally, the Board held that the Department's interpretation of the exemption statute and use of the "line–crossing test" violated neither the interstate commerce clause nor the equal protection clauses of the United States Constitution or the Constitution of the State of Washington. UPS petitioned for review in Superior Court pursuant to RCW 34.04.130. On January 4, 1983, the court entered a written order and judgment affirming the Board of Tax Appeals. This appeal followed.

As this matter came before the Board of Tax Appeals for a formal hearing, judicial review of the Board's decision is governed by RCW 34.04.130 and 34.04.140. RCW 82.03.180. Review is on the record of the administrative tribunal itself,

not of the superior court. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 323–24, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983). Issues of law are reviewed under the "error of law" standard of RCW 34.04.130(6)(d). *Sellers,* at 325. This standard "allows the reviewing court to essentially substitute its judgment for that of the administrative body, though substantial weight is accorded the agency's view of the law." *Sellers,* at 325.

 Central to our disposition is the rule that tax exemptions are narrowly construed. *Department of Rev. v. Schaake Packing Co.,* 100 Wn.2d 79, 83–84, 666 P.2d 367 (1983); *Group Health Coop. v. State Tax Comm'n,* 72 Wn.2d 422, 429, 433 P.2d 201 (1967).

I

The first question is whether the Board of Tax Appeals erred in ruling that appellant's vehicles which were used solely within the state of Washington could not qualify for exemption from the use tax.

Under RCW 82.12.0254, quoted above, a motor vehicle is exempt from use tax if:

1. The user holds an ICC permit;
2. The vehicle is used
 a. in substantial part
 b. in the normal and ordinary course of the user's business
 c. for transporting therein persons or property for hire across the boundaries of the state; and
3. The first use of the vehicle in Washington is actual use in conducting interstate or foreign commerce.

The Department does not attempt to argue that the UPS vehicles have failed to meet the first and third of these elements. The controversy in this case centers on the second element, requiring that, in order to be exempt from the use tax, a vehicle must be:

used *in substantial part* in the normal and ordinary course of the user's business *for transporting therein persons or property for hire across the boundaries of*

*this state . . .*
(Italics ours.)

UPS contends that this language merely requires that a vehicle be used in substantial part to carry property which will cross or has crossed a state boundary. According to UPS, a vehicle need not itself cross a state boundary in order to qualify for exemption from the use tax. In other words, the boundary–crossing language in this exemption statute applies to the property being carried rather than the vehicle carrying it. Thus, all UPS vehicles would qualify for the exemption; the vehicles would have been used in substantial part in conducting interstate commerce because over 70 percent of the parcels carried by UPS are interstate parcels. Stipulation of fact 4.1. Even the delivery vans, most of which never cross a state boundary, could qualify for the exemption under this interpretation of RCW 82.12-.0254.

The Department, on the other hand, contends that the Legislature did not intend to exempt from the use tax all motor vehicles substantially involved, directly or indirectly, in interstate commerce; rather, the exemption was intended to apply only to those motor vehicles which actually cross the boundaries of this state while carrying persons or property for hire. In other words, the vehicle itself must cross the state line to be eligible for the exemption. (Of course, the vehicle would have to be used "in substantial part" for crossing state boundaries while carrying cargo; one trip would not be enough to earn an exemption.)

The language of RCW 82.12.0254 favors the Department's position. The exemption refers to the "use . . . of any motor vehicle." The vehicle must be "used . . . for transporting *therein* persons or property . . . across the boundaries of this state . . ." (Italics ours.) UPS's argument that only the persons or property, and not the vehicle, need cross state lines ignores the word "therein." Statutes are to be construed, wherever possible, so that "no clause, sentence or word shall be superfluous, void, or insignifi-

cant". *Kasper v. Edmonds,* 69 Wn.2d 799, 804, 420 P.2d 346 (1966), quoting *Groves v. Meyers,* 35 Wn.2d 403, 407, 213 P.2d 483 (1950).

Both UPS and the Department argue that a consideration of other exemptions from the sales and use tax which are not directly applicable in this case support their opposing interpretations of the provision here at issue. UPS points to the exemption for use of tangible personal property which becomes a "component part of any motor vehicle or trailer used" by an ICC permit holder. That exemption, also found in RCW 82.12.0254, contains no boundary–crossing requirement. UPS argues that it would be irrational to say that, while its delivery vans are not exempt from the use tax, new parts put on the vans are exempt. UPS also cites the exemption in RCW 82.12.0254 for "the use of any airplane, locomotive, railroad car, or watercraft used primarily in conducting interstate or foreign commerce . . ." Again, this exemption contains no requirement that the airplanes, trains, or boats actually cross state boundaries. UPS argues that RCW 82.12.0254 can be construed consistently as a whole only if no line–crossing requirement is imposed for exemption of motor vehicles as well.

The State, however, refers to the elementary rule that where the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent. *See Seeber v. Public Disclosure Comm'n,* 96 Wn.2d 135, 139, 634 P.2d 303 (1981). The presence of boundary–crossing language in the motor vehicle carrier exemption, taken together with the absence of such language in the exemption for other types of carriers, would thus support the State's interpretation of RCW 82.12.0254. Moreover, the wisdom or social desirability of taxing motor vehicles used solely within the state, while exempting component parts of those vehicles, is not for the courts to decide. *See St. Paul & Tacoma Lumber Co. v. State,* 40 Wn.2d 347, 351, 243 P.2d 474 (1952). The issue is what the Legislature intended; that intent is to be deduced,

as far as is possible, from what the Legislature said. *St. Paul*, at 351.

We construe RCW 82.12.0254 to require that a vehicle actually cross the state boundaries in order to be eligible for exemption from the use tax. The package delivery vehicles operate totally within Washington and do not qualify for the exemption.

## II

UPS next contends that the Board of Tax Appeals erred in upholding the decision by the Department of Revenue to impose a use tax on those vehicles belonging to UPS which crossed the state line on fewer than 25 percent of their trips. UPS argues that the Department's decision was arbitrary and capricious.

As discussed earlier, UPS vehicles used solely within the state cannot meet the threshold requirement for exemption because they are not used for transporting *therein* persons or property for hire *across state boundaries*. Many UPS vehicles, however, are used for transporting cargo across state boundaries. These vehicles (primarily tractor–trailers) are exempted from the use tax *if* such interstate use is "substantial". RCW 82.12.0254.

Historically, the Department of Revenue has chosen among several methods to determine whether a vehicle is used "in substantial part" in interstate commerce under RCW 82.12.0254. The various methods have included the number of trips across state lines, amount of interstate hauling revenue, and ton–miles traveled in interstate commerce. The method used by the Department in each case has depended upon the nature of the business involved. Stipulation of fact 5.2.

In this case, the Department determined that 39 of UPS's tractors were taxable. That determination was made as follows: The auditor first determined the mileage covered by each vehicle in each year in the audit period in the states of Washington, Oregon, and Idaho. If a vehicle's mileage in any one year was entirely within Washington, no

further audit was performed and use tax was assessed. If a vehicle's mileage was in the state of Washington and also in the other states, the auditor proceeded to determine that vehicle's trips in each year of the audit period which involved a crossing of the Washington State lines as a percentage of its total trips in that year. Use tax was assessed with respect to any vehicle which, in any year, had less than 25 percent line–crossing trips. The percentage of line–crossing trips was ascertained by referring to the line–crossing cards which UPS drivers are required to fill out upon crossing a state boundary.

UPS argues that use of the 25 percent line–crossing test is arbitrary and capricious because that test is the only one which the vehicles at issue here are unable to meet. They claim that many of their vehicles which do not cross state lines on 25 percent of their trips could pass the ton–mile or interstate hauling revenue tests sometimes used by the Department. Based upon this, they argue that the Department's refusal to use the ton–mile and interstate hauling revenue tests in this case is arbitrary and capricious because the Department has, in the past, used those same tests in determining "whether a vehicle is used 'in substantial part' in interstate commerce." Stipulation of fact 5.2.

▮ The fact that the Department may have used various tests to determine whether a vehicle is used in substantial part in "interstate commerce", however, does not require the Department to use those same tests to determine whether a vehicle is used "in substantial part . . . for transporting therein persons or property for hire across the boundaries of this state . . ." The two inquiries are quite different; the same measurement may not work for both. A vehicle (such as a UPS package delivery van) might be shown to be substantially involved in "interstate commerce" under the interstate hauling revenue test. Yet, that same vehicle might never have been used to actually transport property across state boundaries. This could only be shown by a line–crossing test such as that used by the Department.

Moreover, a line–crossing test as a measure of the substantiality of a vehicle's use to carry cargo across state lines is far more practicable. Application of a revenue or ton–mile test to each vehicle that crossed a state line would require an immense amount of detailed data as to the contents of each particular vehicle. While UPS offered general statistics regarding its operations as a whole, the type of detailed information necessary for the use of a revenue or ton–mile test does not appear to have been available.[1] All that is needed to apply the 25 percent line–crossing test, however, are the line–crossing cards filled out by UPS drivers when a state boundary is crossed.

Agency action is "arbitrary and capricious" only if it is "'willful and unreasoning action in disregard of facts and circumstances.'" *Skagit Cy. v. Department of Ecology,* 93 Wn.2d 742, 749, 613 P.2d 115 (1980). We do not find the Department of Revenue's application of a 25 percent line–crossing test as a measure of the substantiality of a vehicle's use in hauling cargo across state boundaries to have been arbitrary and capricious.

### III

The next issue raised by UPS is whether the Department's construction and application of RCW 82.12.0254 violates the commerce clause of the United States Constitution.

The commerce clause, U.S. Const. art. 1, § 8, cl. 3, requires four things of a state tax on interstate commerce: (1) there must be a sufficient nexus between the interstate activities and the taxing state; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; and (4) the tax must be fairly related to the services provided by the state. *Complete Auto Tran-*

---

[1]The detailed information which was made available by UPS referred to the contents of package delivery vans. Such vans rarely cross state lines, however; most of the line–crossing is done by tractor–trailers. Information regarding the contents of local delivery vans is of little help in the application of a revenue or ton–mile test to tractor–trailers.

*sit, Inc. v. Brady,* 430 U.S. 274, 279, 51 L. Ed. 2d 326, 97 S. Ct. 1076 (1977); *Chicago Bridge & Iron Co. v. Department of Rev.,* 98 Wn.2d 814, 826, 659 P.2d 463, *appeal dismissed,* __ U.S. __, 78 L. Ed. 2d 718, 104 S. Ct. 542 (1983).

UPS does not argue that the State of Washington is constitutionally unable to tax the vehicles here at issue. A state may, under appropriate conditions, tax intrastate activity even though that activity is part of interstate commerce. *Department of Rev. v. Association of Wash. Stevedoring Cos.,* 435 U.S. 734, 745, 55 L. Ed. 2d 682, 98 S. Ct. 1388 (1978).

UPS does argue, however, that the Department's construction of RCW 82.12.0254 discriminates between different forms of interstate commerce, thus violating the commerce clause. UPS contends that the State's refusal to allow use tax exemptions to those vehicles which do not cross state boundaries results in a classification among interstate motor carriers based upon the manner in which they operate. A carrier operating its interstate business so as to use a single vehicle to transport property from a point in Washington to a point in another state will be eligible for the exemption while a carrier, such as UPS, whose efficiency stems from its use of different kinds of vehicles, some operating within and some both within and without the state, will be denied the exemption. UPS argues that placing upon the latter type of carrier a burden not borne by the former, when both use their vehicles in interstate commerce, violates the commerce clause.

UPS relies primarily on *Boston Stock Exch. v. State Tax Comm'n,* 429 U.S. 318, 50 L. Ed. 2d 514, 97 S. Ct. 599 (1977) to support its argument. In that case, the Supreme Court declared unconstitutional a New York tax on stock transfers and sales which gave a 50 percent reduction in the tax to transactions by nonresidents when the transactions involved in-state sales. Residents and nonresidents making out-of-state sales but in-state transfers did not receive the deduction. The statute also limited the tax to $350 when the transactions involved in-state sales. When the transac-

tion involved out-of-state sales, there was no limit on the tax. The Court found unconstitutional discrimination because the tax imposed "a greater tax liability on out-of-state sales than on in-state sales . . ." 429 U.S. at 332. The Court held that a state could not "tax in a manner that discriminates between two types of interstate transactions *in order to favor local commercial interests over out-of-state businesses . . .*" (Italics ours.) 429 U.S. at 335.

There is no such favoritism toward local commercial interests in the use tax scheme before us in this case. "A state tax on interstate commerce is not discriminatory unless it affords a 'differential tax treatment of interstate and intrastate commerce'." *Chicago Bridge & Iron Co.*, 98 Wn.2d at 830, citing *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 618, 69 L. Ed. 2d 884, 101 S. Ct. 2946 (1981). Thus, RCW 82.12.0254 does not violate the commerce clause.

## IV

Finally, we are faced with the issue of whether the Department's construction and application of RCW 82.12-.0254 violates the equal protection clause of the Washington State Constitution.

Const. art. 1, § 12 provides:

> No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.

To comply with Const. art. 1, § 12, a legislative classification must meet three requirements: (1) the legislation must apply alike to all persons within a designated class, (2) there must be reasonable grounds for distinguishing between those who fall within the class and those who do not, and (3) the disparity in treatment must be germane to the object of the law in which it appears. *Sonitrol N.W., Inc. v. Seattle*, 84 Wn.2d 588, 589-90, 528 P.2d 474 (1974).

UPS contends that the second requirement has not been met in this case. It argues that, by exempting from the use tax only those vehicles which carry cargo across state lines,

the State has discriminated against carriers such as UPS which have, in the interest of efficiency, developed a delivery system whereby only a few vehicles actually cross state lines. Such a distinction between carriers is urged to be unreasonable because it is based solely on a difference in the method of operation of a certain business.

This argument is not persuasive. We have stated that "a classification based solely on a difference in the method of operation of a particular kind of business is permissible." *Sonitrol,* at 591. In *Sonitrol,* the court held that a tax imposed upon centrally monitored burglar alarm systems did not violate the equal protection clause found in Const. art. 1, § 12, even though the tax was at a rate 70 times that imposed on local–alarm and foot–patrol burglar alarm systems.

The Legislature has broad discretion in making classifications for purposes of taxation. *Texas Co. v. Cohn,* 8 Wn.2d 360, 386, 112 P.2d 522 (1941).

> The difference between the classes need not be great. It may consist of physical and chemical dissimilarity of commodities or difference in the character or manner of their uses. Classification may also be permissible if it is reasonably related to some lawful taxing policy of the state, such as greater ease or economy in the administration or collection of a tax . . . or the equalization of the burdens of taxation.

*Cohn,* at 386–87. In *Boeing Co. v. State,* 74 Wn.2d 82, 442 P.2d 970 (1968), this court upheld a use tax imposed on bailments of personalty not involving consideration, even though leases of personalty were not taxed. The basis of the subject classification was simply the fact that lessees paid for the use of the personalty while bailees did not. *Boeing,* at 87. In *Black v. State,* 67 Wn.2d 97, 406 P.2d 761 (1965), the court upheld a retail sales tax on the lease of a ship used as a floating motel despite the fact that similar transactions involving hotels on land were exempted from the tax. In *Hemphill v. Tax Comm'n,* 65 Wn.2d 889, 400 P.2d 297 (1965), *appeal dismissed,* 383 U.S. 103, 15 L. Ed. 2d

615, 86 S. Ct. 716 (1966), the court upheld a sales tax which was imposed on admission fees of amusement and recreation activities such as golf, ski lifts, skating, and billiards, but which excluded bowling.

A challenger bears the burden of showing there is no reasonable basis for the questioned classification in a revenue statute. The test is merely whether any state of facts can reasonably be conceived that would sustain the classification. *Hemphill,* at 891–92.

In this case, a distinction has been made between vehicles used entirely within the state of Washington and vehicles used in substantial part outside the state. It is logical, or at least conceivable, that vehicles used entirely within the state would benefit from the services provided by the State to a greater degree than would vehicles often used outside the state. This justifies the line–crossing requirement for exemption from the use tax and the State's construction and application of RCW 82.12.0254 does not violate Const. art. 1, § 12.

The decision of the Board of Tax Appeals is affirmed.

WILLIAMS, C.J., ROSELLINI, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM and WIELAND, JJ. Pro Tem., concur.