[No. 35396-2-II.   Division Two.   March 4, 2008.]

NELSON ALASKA SEAFOODS, INC., *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*Larry N. Johnson,* for appellant.

*Robert M. McKenna, Attorney General,* and *Douglas Van De Brake, Assistant,* for respondent.

¶1 Van Deren, A.C.J. — Nelson Alaska Seafoods, Inc., appeals the trial court's order granting summary judgment to the Department of Revenue (Department) in Nelson Alaska's tax refund action under RCW 82.32.180.[1] Nelson Alaska contends that the plain language of former RCW 82.27.020(1) (1985)[2] insulated it from the duty to pay an enhanced food fish tax. In the alternative, it contends that construing former RCW 82.27.020(1) as ambiguous mandates a ruling in its favor. Finding that the plain language of both former and present RCW 82.27.020(1) unambiguously supports the imposition of the enhanced food fish tax on Nelson Alaska as the first commercial possessor, we affirm.

## FACTS

¶2 The Washington State Department of Natural Resources (DNR) auctions the right to commercially "harvest . . . geoducks . . . on specified tracts of state owned land." Clerk's Papers (CP) at 56. After the bidding process,

---

[1] RCW 82.32.180 states, in pertinent part, that "[a]ny person . . . having paid any tax as required and feeling aggrieved by the amount of the tax may appeal to the superior court of Thurston county."

[2] Former RCW 82.27.020(1) stated:

> In addition to all other taxes, licenses, or fees provided by law there is established an excise tax on the commercial possession of enhanced food fish as provided in this chapter. The tax is levied upon and shall be collected from the owner of the enhanced food fish whose possession constitutes the taxable event. The taxable event is the first possession in Washington by an owner. Processing and handling of enhanced food fish by a person who is not the owner is not a taxable event to the processor or handler.

Portions of former RCW 82.27.020 were amended in 1993 and 1999 to update the tax percentages applicable to the various types of enhanced food fish; however, the language of section (1) remained unchanged during the period at issue in the instant appeal.

DNR and the successful bidder enter into a contract that specifies a contract price per pound for harvesting geoducks.[3]

¶3 DNR auctioned the right to commercially harvest geoducks to Nelson Alaska, a Washington corporation that engaged in the harvest, purchase, and resale of geoducks from January 1, 1998 to July 1, 2001. During that time, Nelson Alaska entered into approximately 30 to 40 contracts with DNR. Under each harvesting contract, "[t]itle to the geoducks . . . and the risk of loss passes to the Purchaser when the Purchaser severs the geoducks from the Property." CP at 30. The harvesting agreements granted Nelson Alaska "a nonexclusive right to enter upon the Property . . . for the purpose of commercially harvesting geoducks" from "bedlands owned by the State of Washington." CP at 28. The contracts are silent about who must pay the enhanced food fish tax under former RCW 82.27.020(1).

¶4 Nelson Alaska hired independent contractors to harvest the geoducks on its behalf. The contractors harvested from a boat, using divers equipped with high-pressure water blowers to remove geoducks from the seabed. The geoducks were hoisted to the surface in a basket. A DNR

---

[3] We have previously described DNR's management of geoducks:

Geoducks are within the class of animals known as mollusks. They are large clams, averaging two pounds each, that live along the Pacific Northwest coast. It takes them four to five years to reach an average harvestable size of one-and-a-half pounds. They burrow into the ocean floor to a depth of as much as three feet and commercial divers harvest them from the beds of the state's navigable waters.

Unlike other clam resources, the State does not lease lands containing geoducks for long-term cultivation. Instead, it leases tracts of aquatic land yearly until the geoduck resource is harvested down to a set density. The tract is then placed into recovery status, a period that may take from 11 to 42 years. DNR's management plan thus relies on natural replenishment of geoducks to provide sustained harvest opportunities rather than cultivation and enhancement.

The legislature has authorized DNR to regulate commercial geoduck harvesting in Washington State waters. [Former] RCW 79.96.080 [(1990), *recodified as* RCW 79.135.210. Laws of 2005, ch. 155, § 708]. DNR implements an established auction process under which geoduck harvesters must comply with numerous requirements prior to and after successfully bidding on harvesting rights.

*Wash. State Geoduck Harvest Ass'n v. Dep't. of Natural Res.*, 124 Wn. App. 441, 444-45, 101 P.3d 891 (2004).

representative monitored the divers to ensure compliance with the harvesting contract and, at the end of each day, weighed the geoducks and issued a fish ticket documenting the harvest.

¶5 Also during this period, Nelson Alaska paid the Department approximately $85,853.86 for the enhanced food fish tax under chapter 82.27 RCW for its geoduck harvests under its contracts with DNR. In April 2002, Nelson Alaska filed for a refund of the taxes it paid, claiming that the enhanced food fish tax did not apply to it. The Department denied Nelson Alaska's refund request and Nelson Alaska appealed. Nelson Alaska contended, among other things, that it was "not the party liable for the tax." CP at 51. An administrative law judge denied the appeal, concluding that Nelson Alaska was liable for the fish tax.

¶6 In December 2003, Nelson Alaska filed a timely appeal in the superior court under RCW 82.32.180. In October 2005, both parties moved for summary judgment. Nelson Alaska again argued that it was not the party liable for the tax and suggested that DNR was the first commercial possessor and was the party responsible for the tax under the plain language of former RCW 82.27.020(1). The trial court granted the Department's motion for summary judgment.

¶7 Nelson Alaska appeals.

## ANALYSIS

¶8 Nelson Alaska argues that the legislature did not intend, under former RCW 82.27.020(1), to tax the harvester of geoducks purchased from DNR.

### I. STATUTORY HISTORY ARGUED BY NELSON ALASKA

¶9 Nelson Alaska initially contends that the trial court failed to follow "long-established rules of statutory construction" in interpreting former RCW 82.27.020. Br. of Appellant at 19. Specifically, it argues that the statute's

plain language is controlling. It maintains that DNR was the first possessor and owner of the geoducks; thus, under the statute's plain language, Nelson Alaska, as the second owner, should not have been taxed and is, therefore, due a refund.

¶10 Before 1985, the applicable sentence in former RCW 82.27.020(1) (1983) read, "The taxable event is the first possession by an owner after the food fish, shellfish, or anadromous game fish have been landed." During the period at issue, the sentence read, "The taxable event is the first possession in Washington by an owner." Former RCW 82.27.020(1)(1985). In 2001, the legislature again amended the sentence to read, "The taxable event is the first possession in Washington by an owner after the enhanced food fish has been landed." Laws of 2001, ch. 320, § 9.

¶11 Alternately, Nelson Alaska asserts that, regardless of the legislature's underlying intent, the 1985 amendment created a loophole in the geoduck taxing regime that, when combined with the rule of construction requiring that " 'the statute must be construed most strongly against the taxing power and in favor of the taxpayer,' " mandates reversal of the trial court's decision. Br. of Appellant at 19 (quoting *Ski Acres, Inc. v. Kittitas County*, 118 Wn.2d 852, 857, 827 P.2d 1000 (1992)); *see Estate of Hemphill v. Dep't of Revenue*, 153 Wn.2d 544, 552, 105 P.3d 391 (2005); *Dep't of Revenue v. Hoppe*, 82 Wn.2d 549, 552, 512 P.2d 1094 (1973).

¶12 Nelson Alaska asserts that the 1985 amendment's removal of the phrase "after the food fish . . . have been landed" is dispositive. Laws of 1985, ch 413, § 2. It argues that "[t]his change is clear and unambiguous," Br. of Appellant at 21, and points to the legislature's simultaneous decision to add a definition for the word "landed"[4] as evidence of its intention to change the existing taxing regime. *See* former RCW 82.27.010(5) (1985); Br. of Appel-

---

[4] Former RCW 82.27.010(5) (1985) states that " '[l]anded' " means "the act of physically placing enhanced food fish (a) on a tender in the territorial waters of Washington; or (b) on any land within or without the state of Washington including wharves, piers, or any such extensions therefrom."

lant at 21 n.4. Nelson Alaska asserts that this conclusion is reinforced by the legislature's 2001 amendment, essentially returning the sentence to its original form.[5] *See* Laws of 2001, ch. 320, § 9.

## II. Standard of Review

¶13 We review the trial court's order on summary judgment and issues of statutory interpretation de novo. *Dot Foods, Inc. v. Dep't of Revenue*, 141 Wn. App. 874, 881, 173 P.3d 309 (2007). The only issues to be resolved here are legal in nature; accordingly, "[w]e review a trial court's legal conclusions in a tax refund action de novo." *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 148, 3 P.3d 741 (2000).

¶14 "When interpreting statutory language, our goal is to carry out" the legislature's intent. *Simpson*, 141 Wn.2d at 148. "In ascertaining this intent, the language at issue must be evaluated in the context of the entire statute." *Simpson*, 141 Wn.2d at 149. We derive the legislative intent from the statute's plain language and ordinary meaning; however, we must avoid unlikely, absurd, or strained results. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005).

## III. Commercial Geoduck Use—RCW 82.27.020(1)

¶15 Our review of the statute's plain language and related cases leads us to agree with the Department that Nelson Alaska is the proper taxable entity and that the trial court did not err. In *Washington State Geoduck Harvest Ass'n v. Department of Natural Resources*, 124 Wn. App. 441, 449, 101 P.3d 891 (2004), we held that the public trust doctrine applied to the DNR's sale of commercial geoduck harvesting rights on public lands. We described DNR's role under the public trust doctrine:

> The public trust doctrine, as applied to DNR's regulation of commercial geoduck harvesting, protects the public right to

---

[5] There is no legislative history explaining why the legislature again changed the language.

recreation, commerce, and commercial fishing, all of which are bolstered by the state's system of facilitating sustainable geoduck harvesting and natural regeneration of the resource. And the proceeds from the sale of harvesting rights go to support aquatic resource management and enhancement of aquatic lands for all uses by the public. Thus, DNR's procedures and regulation of commercial geoduck harvesting serves the public, satisfies the public trust doctrine's requirements, and is not an unconstitutional infringement on the public's rights.

*Geoduck Harvest Ass'n*, 124 Wn. App. at 452 (citations omitted). DNR regulates the commercial geoduck harvest for the public good; it does not engage in the commercial possession, use, or harvest of geoducks. *See Biggers v. City of Bainbridge Island*, 162 Wn.2d 683, 695, 169 P.3d 14 (2007) ("According to the public trust doctrine, the shorelines and state waters are held by the state, in trust for all the people of the state.").

¶16 Nelson Alaska's statutory arguments ignore the unambiguous first sentence of the taxing statute that, both before and after the 1985 amendment, has required "an excise tax on the *commercial possession* of" enhanced food fish. RCW 82.27.020(1) (emphasis added). DNR's auction of the geoduck harvesting rights and subsequent entry into sales contracts with Nelson Alaska allowed Nelson Alaska to use the geoducks commercially and, thus, Nelson Alaska is the first commercial owner of the geoducks. Because DNR only regulates commercial geoduck harvesting, the excise tax on geoduck commercial use under the plain language of RCW 82.27.020(1) was due when the geoducks came into Nelson Alaska's possession through its harvesting efforts.

¶17 Despite Nelson Alaska's strained efforts to explain how the prior and subsequent versions of RCW 82.27.020(1) arguably support its contention that the legislature intended the unlikely and absurd result of either creating a loophole or taxing DNR as the "owner" of the geoducks, the statute's plain language focusing on commercial possession directs the result here. The statute's plain language clearly

supports the imposition of the enhanced food fish tax on Nelson Alaska.

¶18 We affirm the trial court's order of summary judgment in favor of the Department.

BRIDGEWATER and PENOYAR, JJ., concur.

Review denied at 164 Wn.2d 1018 (2008).