215 P.3d 222 (2009)
HOME DEPOT USA, INC., Appellant,
v.
STATE of Washington, DEPARTMENT OF REVENUE, Respondent.
No. 37854-0-II.
Court of Appeals of Washington, Division 2.
August 25, 2009.
*223 Randall Paul Beighle, Ryan P. McBride, Timothy W. Jones, Lane Powell PC, Seattle, WA, Jennifer H. Rearden, Randy M. Mastro, Gibson, Dunn & Crutcher, New York, NY, for Appellant.
David M. Hankins, Atty. Generals Office/Revenue Division, Rosann Fitzpatrick, Washington Attorney General, Olympia, WA, for Respondent.
*224 HOUGHTON, J.
¶ 1 Under former RCW 82.08.037 (2002), Home Depot USA, Inc., seeks a refund of sales tax it paid on defaulted transactions made on its private label credit card. Home Depot contracted with a financing company to establish the private label credit card. It sold its entire interest in the accounts to the financing company in return for payment of the full amount of the sale made on the card plus the sales tax, minus a service fee. The trial court found Home Depot ineligible to obtain a sales tax refund and granted the Department of Revenue's (DOR) motion for summary judgment. Because Home Depot cannot obtain a sales tax refund for bad debts its customers owe to a third party, we affirm.

FACTS
¶ 2 Between July 1, 1997, and July 31, 2003 (the refund period), Home Depot, a retailer, paid state sales tax for purchases made at Home Depot stores in Washington. Under former RCW 82.08.037[1] (sales tax refund statute), Home Depot seeks a refund of $1,098,641.61 in sales tax. This amount represents the amount of sales tax Home Depot paid on defaulted transactions made on its private label credit card (Home Depot card).
¶ 3 In Washington, Home Depot entered into agreements with General Electric Capital Corporation (GECC), through various operating entities (banks), to have GECC issue Home Depot cards to Home Depot customers. Cardholders may use the credit cards only in Home Depot stores.
¶ 4 GECC and Home Depot executed a separate contract for consumer accounts, commercial accounts, and business accounts. All contracts provided that (1) the named contracting bank is the exclusive owner of the credit card accounts, (2) the contracting bank bears the risk of all credit losses on the accounts, and (3) Home Depot has no interest in the accounts or indebtedness the credit card program created. Consistent with these provisions, GECC took a bad debt deduction, under 26 U.S.C. § 166,[2] for defaulted Home Depot card accounts on its federal income tax returns.
¶ 5 GECC, not Home Depot, set the finance charges, annual fees, late fees, and all other terms of the credit card accounts Home Depot customers opened. GECC made all decisions related to customer eligibility for a Home Depot card.
¶ 6 In consideration for the agreements, GECC paid Home Depot a $6.5 million signing bonus for the consumer portion of the program and $500,000 for the business portion. At the end of each day, Home Depot transmitted that day's Home Depot card sales to GECC. GECC then paid Home Depot the proceeds on the sales, including any retail sales taxes, minus charge-backs for circumstances such as returned merchandise, and, most importantly for the purpose of this appeal, service fees.
¶ 7 The deducted service fees ranged from 0 percent to 13.80 percent, depending on the account type. For example, Home Depot paid no service fees on at least some nonpromotional consumer purchases. In contrast, it paid the highest rate for promotional consumer sales marketed as interest free, if *225 the customer paid the entire balance during the final month of the no-interest period. Home Depot does not dispute that it deducted the service fees it paid GECC as an ordinary business expense on its federal tax returns.
¶ 8 Home Depot and GECC used a complex economic analysis to set the service fees. GECC forecasted the amount of profit it expected to earn on various categories of credit sales in the form of interest, late fees, and other charges, and it balanced this against expected losses from uncollectible debts and other expenses. These other expenses included the costs of borrowing money, overhead, collections, and operating expenses. As a GECC employee explained, "[R]eally Home Depot paid us a service fee, a discount, if you will, for transactions to run their program." Clerk's Papers (CP) at 33.
¶ 9 DOR denied Home Depot's refund petition. Home Depot appealed to the superior court. DOR moved for summary judgment on the ground that Home Depot did not incur a deductible loss on the defaulted Home Depot card sales. The trial court granted DOR's motion, dismissing Home Depot's refund request and Home Depot appeals.

ANALYSIS
¶ 10 We must decide whether the trial court erred in granting DOR summary judgment. In doing so, we review the trial court's decision that Home Depot cannot obtain a sales tax refund under former RCW 82.08.037 because it could not deduct defaulted debt on its private label cards as bad debt under federal income tax laws. Former RCW 82.08.037, in effect during the refund period, states, "A seller is entitled to a credit or refund for sales taxes previously paid on debts which are deductible as worthless for federal income tax purposes."
¶ 11 Home Depot advocates that the statute means a "seller is entitled to a credit or refund for sales taxes previously paid on debts which are deductible" by any company "as worthless for federal income tax purposes," so long as the seller/sales tax refund claimant, if it is not the company able to deduct the bad debt under federal tax law, can show that it actually bore the risk of loss from the defaulted debts. Former RCW 82.08.037; Appellant's Br. at 3. DOR counters that it means "[a] seller is entitled to a credit or refund for sales taxes previously paid on debts which are deductible" by the seller "as worthless for federal income tax purposes." Former RCW 82.08.037; Resp't's Br. at 9-10.

A. Standard of Review

1. Summary Judgment
¶ 12 We review summary judgment orders de novo, engaging in the same inquiry as the trial court. Berrocal v. Fernandez, 155 Wash.2d 585, 590, 121 P.3d 82 (2005); see also Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wash.2d 506, 515-16, 799 P.2d 250 (1990). We may affirm the trial court's order on any basis that the record supports. LaMon v. Butler, 112 Wash.2d 193, 200-01, 770 P.2d 1027 (1989).
¶ 13 We consider summary judgment proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We draw all reasonable inferences from the facts in the light most favorable to the nonmoving party. Hisle v. Todd Pac. Shipyards Corp., 151 Wash.2d 853, 860, 93 P.3d 108 (2004).

2. Review of Tax Matters
¶ 14 In a tax case, we review a trial court's legal conclusions, including statutory construction, de novo. Nelson Alaska Seafoods, Inc. v. Dep't of Revenue, 143 Wash. App. 455, 461, 177 P.3d 1161, review denied, 164 Wash.2d 1018, 195 P.3d 89 (2008). "`When interpreting statutory language, our goal is to carry out' the legislature's intent." Nelson Alaska, 143 Wash.App. at 461, 177 P.3d 1161 (quoting Simpson Inv. Co. v. Dep't of Revenue, 141 Wash.2d 139, 148, 3 P.3d 741 (2000)). "`In ascertaining this intent, the language at issue must be evaluated in the context of the entire statute.'" Nelson Alaska, *226 143 Wash.App. at 461, 177 P.3d 1161 (quoting Simpson, 141 Wash.2d at 149, 3 P.3d 741). "We derive the legislative intent from the statute's plain language and ordinary meaning; however, we must avoid unlikely, absurd, or strained results." Nelson Alaska, 143 Wash.App. at 461, 177 P.3d 1161.[3]

B. The Sales Tax Scheme
¶ 15 Washington imposes a sales tax on "each retail sale." Former RCW 82.08.020(1) (2002). The tax is calculated based on the "selling price," meaning "the consideration" without deduction for the seller's overhead expenses. Former RCW 82.08.010(1) (2002). "[T]he measure of the tax is to be the cost to the buyer or consumer, and not the cost to the seller." Klickitat County v. Jenner, 15 Wash.2d 373, 382, 130 P.2d 880 (1942).
¶ 16 A buyer "has the primary burden to pay" sales tax to the seller. AARO Med. Supplies, Inc. v. Dep't of Revenue, 132 Wash.App. 709, 716, 132 P.3d 1143 (2006). The seller has a duty to remit the sales tax to DOR, however, even if it does not collect the tax from the buyer at the time of sale. AARO Med. Supplies, 132 Wash.App. at 716, 132 P.3d 1143. A sales tax paid by the seller to DOR but not paid from a buyer to the seller constitutes a statutory "debt" owed by the buyer to the seller. Former RCW 82.08.050 (2002).[4]
¶ 7 As previously stated, former RCW 82.08.037 provided relief to sellers owed an unpaid and uncollectible sales tax debt by granting them a "credit or refund." DOR maintains that the policy behind this statute is to "provide relief to vendors" left holding uncollectible sales tax debt. See James A. Amdur, Recovery of Sales Taxes Paid on Bad Debts, 38 A.L.R.6th 255 (2008). Generally, Home Depot takes the position that the statute intended to prevent unjust enrichment to DOR by requiring refund of sales taxes on defaulted transactions.

C. Puget Sound National Bank National Bank v. Department of Revenue

¶ 18 Both parties rely on the only case addressing former RCW 82.08.037, Puget Sound National Bank v. Department of Revenue, 123 Wash.2d 284, 868 P.2d 127 (1994).[5] Home Depot contends that our Supreme Court set out three requirements to qualify for a refund under the statute and that it meets these requirements. DOR counters, "Puget Sound supports the proposition that a refund claimant must incur a deductible bad debt loss on a sale to qualify for a sales tax refund." Resp't's Br. at 15.
¶ 19 In Puget Sound, the bank purchased installment contracts from automobile dealers. 123 Wash.2d at 285-86, 868 P.2d 127. These contracts allowed car buyers to purchase an automobile over a time period. Puget Sound 123 Wash.2d at 285-86, 868 P.2d 127. Each time a contract was signed, the dealership paid the full amount of sales tax due on the full purchase price of a car to DOR. Puget Sound, 123 Wash.2d at 285, 868 P.2d 127.
*227 ¶ 20 When the bank purchased a contract, it paid the dealer the balance due on the installment contract, "including the uncollected portion of the state sales tax," and, in return, it received an assignment of all of the dealer's rights in the contract. Puget Sound, 123 Wash.2d at 286, 868 P.2d 127. If a purchaser defaulted on a contract the bank purchased, the bank wrote off the loss as "worthless debt for federal tax purposes." Puget Sound, 123 Wash.2d at 286, 868 P.2d 127.
¶ 21 The bank sought a refund of the sales tax under former RCW 82.08.037. Puget Sound, 123 Wash.2d at 285, 868 P.2d 127. Our Supreme Court determined that the bank was eligible for a refund. Puget Sound, 123 Wash.2d at 285, 868 P.2d 127.
¶ 22 A main issue in that case was whether the bank qualified as "a seller" "making sales at retail" under the words of the refund statute and a related definitional statute, RCW 82.08.010. Puget Sound, 123 Wash.2d at 287, 868 P.2d 127. In its analysis, the court stated,
Unraveled, RCW 82.08.037 has three requirements: (1) the seller must be a person, (2) making sales at retail, and (3) entitled to a refund for sales taxes previously paid on debts which are deductible as worthless for federal income tax purposes.
Puget Sound, 123 Wash.2d at 287, 868 P.2d 127. The court held that a "seller" as used in the sales tax refund statute included the original seller's assignee. Puget Sound, 123 Wash.2d at 288-89, 868 P.2d 127.
¶ 23 In addition, because general assignment law allows the transfer of both contractual and statutory rights and liabilities, the dealers could also assign the "tax attribute" of "making sales at retail" to the bank, making it eligible for a sales tax refund. Puget Sound, 123 Wash.2d at 288, 291, 868 P.2d 127.[6]Puget Sound also noted that the bank satisfied the third requirement because it deducted its losses as bad debt. 123 Wash.2d at 287, 868 P.2d 127.
¶ 24 Home Depot maintains that it meets the three requirements. First, it sold the goods. Second, it made the sales at retail. Third, it seeks a "return of sales tax it advanced only in connection with those credit transactions that subsequently" became deductable as bad debt.[7] Appellant's Br. at 17. According to Home Depot, "That should have ended the inquiry." Appellant's Br. at 17.
¶ 25 DOR counters that the third requirement applies only to seller-claimants that incur the deductible debt. It notes that the Puget Sound court determined that this requirement had been satisfied when it found relevant that "the Bank took a worthless debt deduction for income tax purposes relating to the installment contracts." 123 Wash.2d at 287, 868 P.2d 127 (emphasis added).
¶ 26 Although Puget Sound did not address a situation, like here, in which someone other than the refund claimant seeks to deduct the bad debt, the opinion supports DOR's position. In assessing the bank's eligibility for a refund, the court considered it material that the bank, the refund claimant, although not the retailer, took the debt deduction. Puget Sound, 123 Wash.2d at 287, 868 P.2d 127.
¶ 27 Here, Home Depot sold all of its interest in the Home Depot card accounts to GECC. Following Puget Sound to its logical conclusion, Home Depot surrendered both its right to deduct these losses as bad debt and its ability to claim a refund for this defaulted debt. 123 Wash.2d at 287, 868 P.2d 127 (noting that "the Bank took a worthless debt deduction for income tax purposes relating to the installment contracts" and concluding the bank had the right to seek the sales tax *228 refund). As a result, Home Depot no longer has the authority to deduct the defaults as bad debt or to seek the sales tax refund.

D. Federal Bad Debt Statute and the State Sales Tax Scheme
¶ 28 As further support for its argument, DOR contends that its reading of the statute is consistent with various other state laws; for example, former RCW 82.08.010(1), which, in relevant part, disallows a seller from reducing the amount of consideration a buyer paid in a retail transaction, and thus the seller's sales tax liability, by its regular overhead costs and expenses; former RCW 82.08.050, which states, "[t]he amount of tax, until paid by the buyer to the seller or to the department, shall constitute a debt from the buyer to the seller"; and the federal bad debt statute. 26 U.S.C. § 166.

1. Former RCW 82.08.050 and the Federal Bad Debt Statute, Internal Revenue Code 166, 26 U.S.C. § 166
¶ 29 DOR contends that the federal bad debt deduction, referenced in the state's tax refund provision, ties the sales tax refund to an existing debt between a seller and a buyer that the seller can no longer collect from the buyer. The federal bad debt tax statute, Internal Revenue Code 166, 26 U.S.C. § 166, requires a "valid and enforceable obligation to pay a fixed or determinable sum of money" that subsequently becomes unrecoverable. 8 Merten's Law of Fed. Income Tax'n § 30:4; see also § 30.1 (noting that if a business takes a bad debt deduction in one year, but later recovers on the debt, it must include the amount recovered in its gross income the year it is recovered). Further, "[o]nly a `bona fide debt', i.e., one which `arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money,' qualifies for deduction." Zimmerman v. United States, 318 F.2d 611, 612 (9th Cir. 1963) (quoting Treas. Reg., § 1.166-1(c)).
¶ 30 DOR adds that when the portion of the sales tax refund statute that refers to "`debts which are deductible as worthless for federal income tax purposes' is read as applying to debts owed to the seller, the scope of the sales tax refund neatly corresponds to the scope of the statutory debt obligation" created by the sales tax scheme. Resp't's Br. at 18. According to DOR, former RCW 82.08.050, by defining that sales tax a seller paid DOR "`shall constitute a debt from the buyer to the seller,'" mirrors the purpose of the federal bad debt refund, which is intended to remedy a seller's personal liability for taxes it paid to DOR but cannot collect as a "debt" from the buyer. Resp't's Br. at 19 (quoting former RCW 82.08.037).
¶ 31 DOR's analysis persuades us. At the time a buyer purchased an item on his or her Home Depot card, Home Depot paid the sales tax due to DOR. This created a statutory "debt" due from the buyer to the seller under former RCW 82.08.050.
¶ 32 Immediately after the sale, however, Home Depot submitted the charge to GECC and GECC reimbursed Home Depot for the purchase price and the sales tax payment. This statutory sales tax debt between Home Depot and the buyer, therefore, ceased to exist; the buyer no longer owed anything to Home Depot. Former RCW 82.08.050. At this point, because the buyer's statutory debt, as well as the underlying debt for the purchase price, was discharged, Home Depot no longer held any "debt"  either as defined by state law under former RCW 82.08.050 or by federal law under 26 U.S.C. § 166  directly attributable to its sales tax payment to DOR.
¶ 33 Moreover, because Home Depot sold its rights to the Home Depot card account, it no longer had any right to collect any unpaid sums from the buyer, further demonstrating that the statutory sales tax debt, as former RCW 82.08.050 defined, was no longer connected to Home Depot. Put differently, the buyer no longer owed anything to Home Depot and Home Depot could not legally seek repayment from the buyer from any loss, direct or indirect, due to the buyer's later default.
¶ 34 Although the tax refund statute at issue does not explicitly contain a requirement that bad debts be deductible by the refund claimant, analysis of related federal and state tax laws demonstrates that the *229 party seeking the deduction must be the one holding the bad debt as well as the one to whom repayment on such a debt would be made. See Home Depot U.S.A., Inc. v. Alabama Dep't of Revenue, No. S. 06-1079, at 7, 10 (Ala. Dep't of Revenue, Admin. Law Div. 2008) (noting that Home Depot is "promptly paid in full, including all applicable sales tax, less a negotiated service fee" and adding that although the refund statute does not "directly state that the retailer must be the party that writes off the bad debt, ... that requirement is implicit"); Home Depot U.S.A., Inc. v. Indiana Dep't of Revenue, 891 N.E.2d 187, 191 (Ind. Tax Ct.2008) (determining that state law reference to the federal bad debt deduction implicitly requires that the "retail merchant" be the one to "write off the receivable as uncollectible debt" in order to get a sales tax refund); In re Sales Tax Claim for Refund of Home Depot, 198 P.3d 902, 904 (Ok.Civ.App.2008) ("[The refund law] implicitly requires the owner of the bad debt account to be the entity allowed the deduction where it also requires the owner to report subsequent collections of bad debt accounts as income."). Home Depot's argument fails.

2. Service Fees and Former RCW 82.08.010(1)
¶ 35 Home Depot next asserts that regardless of GECC's deducting the bad debt, witness testimony demonstrates that Home Depot, and not GECC, actually bore the loss for the defaulted debts. Specifically, Home Depot maintains that in setting the service fees GECC paid to it, the parties "`incorporated the anticipated bad debt expenses into the pricing.'" Appellant's Br. at 21 (quoting CP at 35). Consequently, because it suffered a loss, Home Depot believes it should be entitled to a refund.
¶ 36 Home Depot adds that because GECC's total compensation from Home Depot exceeded GECC's worthless debt losses, it demonstrates that GECC did not bear the loss on the defaulted accounts. In the alternative, Home Depot argues that in the event DOR disputes whether the service fees transferred the loss back to Home Depot, it presents a disputed issue of material fact precluding summary judgment in DOR's favor.
¶ 37 DOR counters by repeating that the sales tax refund is tied to a seller/claimant's eligibility for a federal bad debt deduction. It adds that former RCW 82.08.037 does not authorize a sales tax refund for ordinary business expenses, here, the service fees, because "[a] voluntary business expense can never constitute a bad debt for federal income tax purposes." Resp't's Br. at 22.
¶ 38 Former RCW 82.08.010(1) disallows a seller from reducing the amount of consideration a buyer pays in a retail transaction  the basis for calculating sales tax responsibility  by its regular overhead costs and expenses. DOR's position that this statute implicitly limits the sales tax refund to sales taxes a seller paid to DOR on a buyer's behalf and does not extend to refunds for regular costs of doing business is logical. Further supporting this conclusion is that, similar to former RCW 82.08.010(1), overhead expenses a seller incurred are not deductible as bad debt under the federal tax laws. See Spring City Foundry Co. v. Comm'r of Internal Revenue, 292 U.S. 182, 189, 54 S.Ct. 644, 78 L.Ed. 1200 (1934) (designating bad debt as a "special class" of deductible loss).
¶ 39 Home Depot's position regarding risk re-allocation would have us allow it to take a sales tax refund for ordinary business expenses. Simply because someone can deduct the unpaid sales tax as a bad debt does not transform an ordinary business expense or loss into a refundable sales tax debt under former RCW 82.080.037. This conclusion is amply supported by the state sales tax scheme, which excludes overhead and other costs of doing business from sales tax calculations. Former RCW 82.08.010(1). The mere existence of any economic loss to the refund claimant is simply not sufficient to allow it to invoke former RCW 82.08.037 to cover these losses. Home Depot's argument fails.

E. Unit
¶ 40 In its reply brief, Home Depot presents a new argument that it and the *230 financing companies qualify as a single "unit," allowing Home Depot to seek the sales tax refund. Appellant's Reply Br. at 6. This is because former RCW 82.08.037(2) uses the term "seller," which is defined as "every person ... making sales at retail." In turn, a "person," includes "any group of individuals acting as a unit." RCW 82.04.030; see also Puget Sound, 123 Wash.2d at 287, 868 P.2d 127 (holding that a "seller" is a "person" and "person" includes assignees).
¶ 41 We allowed DOR to file a supplemental brief to address this new argument. DOR first argues that RAP 9.12[8] and RAP 10.3(c)[9] bar this argument. On the merits, it relies on Nordstrom Credit, Inc. v. Department of Revenue, 120 Wash.2d 935, 942, 845 P.2d 1331 (1993), which rejected a similar argument that a retailer and a financing company could be considered a single "unitary business" under the tax laws.
¶ 42 Home Depot cannot raise an issue not presented to the trial court when appealing an order granting summary judgment. See RAP 9.12 (record on review of summary judgment is limited to evidence before the trial court); 1519-1525 Lakeview Blvd. Condo. Ass'n v. Apartment Sales Corp., 101 Wash.App. 923, 932, 6 P.3d 74 (2000) (declining to consider argument not presented to the trial court), aff'd, 144 Wash.2d 570, 29 P.3d 1249 (2001). Consequently, we do not consider this argument.
¶ 43 Moreover, were we to consider the argument, the single unit argument fails under Nordstrom Credit. 120 Wash.2d at 942, 845 P.2d 1331 ("[N]or do Nordstrom and Credit constitute a unitary business. Rather, Credit and Nordstrom engage in `arm's length' sales transactions within the state of Washington."); see also Linnehan Leasing v. State Tax Assessor, 898 A.2d 408, 413 (Me. 2006) (declining to consider an automobile dealer and a finance company a single entity). Like the two Nordstrom Credit companies, GECC and Home Depot did not act as one another's agents nor did they act with any singularity of purpose; rather, they are two separate companies bound only by a negotiated contract.

F. Constitutional Claims
¶ 44 Finally, Home Depot argues that DOR's refund denial violates the due process and equal protection clauses of the United States Constitution and the Washington Constitution's prohibition of discriminatory allocation of privileges and immunities. Specifically, it maintains that there is no plausible reason for DOR to distinguish between retailers that service their own credit accounts and retailers that contract with a financing company to administer credit arrangements.
¶ 45 These claims are subject to lenient standards of review. A state tax law does not violate equal protection if there is a rational and legitimate basis for DOR's classification. Williams v. Vermont, 472 U.S. 14, 23, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985). It does not violate due process unless it is "arbitrary and irrational." United States v. Carlton, 512 U.S. 26, 30, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994). It does not violate article I, section 12, of the state constitution if "any state of facts can reasonably be conceived that would sustain the classification." United Parcel Serv., Inc. v. Dep't of Revenue, 102 Wash.2d 355, 368, 687 P.2d 186 (1984) ("The Legislature has broad discretion in making classifications for purposes of taxation."); see also Wash. Const. art. I, § 12.

1. Equal Protection and Privileges and Immunities
¶ 46 Home Depot relies primarily on Associated Grocers, Inc. v. State, 114 *231 Wash.2d 182, 787 P.2d 22 (1990). That case determined that a business and occupations tax exemption (B & O) for distributors, but not wholesalers, violated equal protection. Associated Grocers challenged the statute. It was an independent company that supplied retail grocers with wholesale inventory. Associated Grocers, 114 Wash.2d at 184-85, 787 P.2d 22. It argued that its equal protection rights were violated because a larger grocery store's subdivision that performed the same role for its own retail stores received the B & O exemption as a "distributor," while Associated Grocers could not qualify because it was classified as a "wholesaler." Associated Grocers, 114 Wash.2d at 185-86, 787 P.2d 22. In Associated Grocers, our Supreme Court applied this test,
[T]he court makes three inquiries: (1) whether the classification applies alike to all members within the designated class; (2) whether some basis in reality exists for reasonably distinguishing between those within and without the class; and, (3) whether the challenged classification bears any rational relation to the purposes of the challenged statute.
114 Wash.2d at 187, 787 P.2d 22. Because the court concluded that other statutes, as well as existing case law, placed wholesalers and distributors in the same class, it struck down the law under both the Washington and United States Constitutions. Associated Grocers, 114 Wash.2d at 188, 787 P.2d 22 ("Where, as here, there is but one class, and the members of it are taxed differently, the statute must be declared unconstitutional."). It, therefore, did not reach the second and third parts of the Yakima test. Associated Grocers, 114 Wash.2d at 187, 787 P.2d 22; Yakima County Deputy Sheriff's Ass'n v. Bd. Of Comm'rs, 92 Wash.2d 831, 601 P.2d 936 (1979).
¶ 47 Associated Grocers does not assist Home Depot because Home Depot does not show that it is in the same class as those retailers that finance their own retail sales. DOR correctly notes that Home Depot is not the party extending credit to buyers, GECC is. The plain language of the financing contracts supports DOR's assertion. Home Depot's argument that describes GECC only as a company that administers Home Depot's financing program is, therefore, misplaced and Home Depot is not functionally equivalent to these companies. Thus, Home Depot cannot correctly claim that it is in the same class as retailers that finance transactions for their purchasers.
¶ 48 The dissent in Associated Grocers sets out the standards for reviewing tax schemes applying to members of different classes. It states that
[a]s the State rightfully points out in its brief, legislative bodies have very broad powers to create classifications in the development of legislation. The test for purposes of classification is whether "`any state of facts reasonably can be conceived that would sustain the classification.'" Furthermore, the Legislature has even broader discretion and greater power in making classifications for taxation than it has for regulation.
....
The point made by the trial court is that there are real differences between the method of business employed by wholesalers and retailers. A different method of business has already been recognized as grounds for distinguishing taxpayers. Therefore, a reasonable basis exists for the Legislature's decision to separate the taxpayers here into two classes.
Associated Grocers, 114 Wash.2d at 195-96, 787 P.2d 22 (citations omitted).[10]
¶ 49 Here, the "method of business" between a retailer that bears its own risk of default on each individual sale differs from that of a retailer that transfers the risk of default on an individual sale to a third party in return for a service fee, even assuming that fee factors in a portfolio-wide percentage of future defaults. Associated Grocers, 114 Wash.2d at 196, 787 P.2d 22; see also Indiana Dep't of Revenue, 891 N.E.2d at 192 n. 7 ("Home Depot, however, is not similarly situated ... it does not finance the sales tax on installment contract purchases which are *232 eventually defaulted upon and therefore it cannot write those receivables off as uncollectible debt for federal tax purposes."); In re Home Depot, Determination No. 821034, at 5 (N.Y.Tax.App.Trib.) (noting the administrative judge concluded that "petitioner is not in all respects like a vendor who finances a sale"). Consequently, if the classification is rational, it will pass equal protection scrutiny. Associated Grocers, 114 Wash.2d at 196, 787 P.2d 22.
¶ 50 DOR presents a number of reasons to support the taxation scheme. These include that the two types of financing arrangements include different types of risks, in that, for example, Home Depot receives instant (re)payment from GECC on all accounts, while a self-financing retailer does not. It also cites DOR's interest in avoiding an excessive administrative burden by limiting the sales tax refund to those parties that can support their refund claims by reference to federal tax law. United Parcel Serv., 102 Wash.2d at 368, 687 P.2d 186 ("`Classification may also be permissible if it is reasonably related to some lawful taxing policy of the state, such as greater ease or economy in the administration or collection of a tax.'") (quoting Texas Co. v. Cohn, 8 Wash.2d 360, 386-87, 112 P.2d 522 (1941)). These reasons are rational and support any difference in tax burdens. Home Depot's argument fails.

2. Due Process
¶ 51 Finally, as stated, a tax statute does not violate due process unless it is "arbitrary and irrational." Carlton, 512 U.S. at 30, 114 S.Ct. 2018. For the reasons discussed in the previous section, the difference in treatment is rational and Home Depot's argument fails.
¶ 52 Affirmed.
We concur: VAN DEREN, C.J., and PENOYAR, J.
NOTES
[1] Former RCW 82.08.037, in effect during the refund period, states, "A seller is entitled to a credit or refund for sales taxes previously paid on debts which are deductible as worthless for federal income tax purposes." The DOR notes that the legislature recently revised the law to explicitly provide that debts "worthless for federal income tax purposes" are "bad debts" as defined by 26 U.S.C. § 166. Resp't's Br. at 13 n. 5. Home Depot adds that the post-2002 amendments (2003, 2004, and 2007) "did not materially alter the language or meaning" of the 2002 statute. Appellant's Br. at 16 n. 4.
[2] 26 U.S.C. § 166 provides:

(a) General rule. 
(1) Wholly worthless debts.  There shall be allowed as a deduction any debt which becomes worthless within the taxable year.
(2) Partially worthless debts.  When satisfied that a debt is recoverable only in part, the Secretary may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.
(b) Amount of deduction.  For purposes of subsection (a), the basis for determining the amount of the deduction for any bad debt shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.
[3] The parties dispute whether the sales tax refund statute creates a "tax preference" as defined by former RCW 43.136.020 (2002). If it is a tax preference, we must read any statute establishing the preference no more broadly than necessary to fulfill its legislative purpose. Consequently, if we determine that a tax preference statute is ambiguous, the statute should be construed in favor of the State. Auto. Club of Wash. v. Dep't of Revenue, 27 Wash.App. 781, 786, 621 P.2d 760 (1980).

Because a tax preference includes a "credit against state tax" and the sales tax refund statute states, "A seller is entitled to a credit or refund for sales taxes previously paid on debts," we conclude that former RCW 82.08.037 functioned as a tax preference. Former RCW 43.136.020; former RCW 82.08.037.
[4] Former RCW 82.08.050 states in relevant part:

The amount of tax, until paid by the buyer to the seller or to the department, shall constitute a debt from the buyer to the seller and any seller who fails or refuses to collect the tax as required with intent to violate the provisions of this chapter or to gain some advantage or benefit, either direct or indirect, and any buyer who refuses to pay any tax due under this chapter is guilty of a misdemeanor.
[5] The relevant language of the statute cited in Puget Sound is identical to the former RCW 82.08.037 (2002). 123 Wash.2d at 287, 868 P.2d 127.
[6] Both parties noted at oral argument that the financial arrangements between GECC and Home Depot were not structured in the same manner as the assignments at issue in Puget Sound.
[7] Home Depot steadfastly maintains that the tax status of the sales tax governs the analysis, in that the tax need only be deductible by some party, here GECC, not that it must be deductible by the seller-claimant. It presents as further support for its argument that the identity of the person holding the right to deduct the debt is irrelevant because the debt need only be "`deductible as worthless for federal income tax purposes,'" and not actually deducted. Appellant's Br. at 18, 19 (quoting former RCW 82.08.037).
[8] RAP 9.12 states:

On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court. The order granting or denying the motion for summary judgment shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered. Documents or other evidence called to the attention of the trial court but not designated in the order shall be made a part of the record by supplemental order of the trial court or by stipulation of counsel.
[9] RAP 10.3(c) provides, "A reply brief should be limited to a response to the issues in the brief to which the reply brief is directed."
[10] The majority did not discuss this standard because it concluded that the two groups of grocers were members of the same class. Associated Grocers, 114 Wash.2d at 187, 787 P.2d 22.