# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LOWE'S HOME CENTERS, LLC, | No. 50080-9-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF REVENUE, STATE OF WASHINGTON, | PUBLISHED OPINION |
| Respondent. | |

JOHANSON, J. — In this state tax refund claim case, Lowe's Home Centers LLC appeals the superior court's order denying Lowe's a tax refund on cross motions for summary judgment filed by the Department of Revenue (DOR) and Lowe's. Lowe's customers made retail purchases using Lowe's credit cards issued by GE Capital Financial Inc. and Monogram Credit Bank of Georgia (collectively the Bank). The Bank paid Lowes in full for the cardholders' purchases within one to two days of each transaction. Some cardholders defaulted on their credit card payments to the Bank, and Lowe's profit-share amount under agreements with the Bank was reduced by the amount in which cardholders had defaulted, up to a specified cap. Lowe's argues that as a matter of law under the undisputed facts, it is entitled to a state retail sales tax and corresponding retailing business and occupation (B&O) tax refund on the reductions to its profit-

sharing income based on its guaranty of defaulted accounts under the profit-sharing agreements. And it argues that the superior court violated its due process and equal protection rights. We affirm.

## FACTS

Between April 1, 2001 and December 31, 2009, the relevant tax assessment period, Lowe's sold merchandise at its retail stores. Many customers paid for products using "private label credit cards" (PLCC) that could be used only at Lowe's stores. Clerk's Papers (CP) at 68. A PLCC is a customized credit card that may be used only at a particular retailer's outlets.

The PLCCs were issued under agreements between Lowe's and the Bank. The agreements provided (1) the terms under which the Bank extended credit to Lowe's customers and furnished cash payment to Lowe's for items purchased under the PLCC accounts, (2) the terms governing ownership and management of PLCC accounts, and (3) the terms by which Lowe's and the Bank jointly marketed the PLCCs to Lowe's customers and shared profits and losses resulting from the PLCC accounts.

### I. PAYMENT FOR PLCC PURCHASES

Under the PLCC agreements, the Bank would extend credit to qualified Lowe's customers for purchases at Lowe's stores. The cardholder could then purchase goods from Lowe's stores using the line of credit provided by the Bank.

When a cardholder made a purchase using a PLCC, the Bank forwarded full payment for the purchase and all corresponding taxes to Lowe's within one to two days. Lowe's promptly remitted to the DOR all Washington sales and B&O taxes on the PLCC transactions. Lowe's

accounted for PLCC transactions as "cash and cash equivalents," the same term used for customers' payments with cash, check, or other credit cards. CP at 60.

## II. OWNERSHIP AND MANAGEMENT OF PLCC ACCOUNTS

Under the PLCC agreements, the Bank was the "sole and exclusive owner" and manager of all PLCC accounts and outstanding receivables. CP at 136. As such, credit sales generated through Lowe's PLCCs were not reflected in Lowe's accounts receivable.

In addition, the Bank had the "sole right to establish the finance charge rates" and "all other terms and conditions" related to the credit accounts. CP at 136. Lowe's had "no right, title or interest" in the credit accounts and transaction-related documentation. CP at 136. The Bank had the exclusive right to receive cardholder payments. And the Bank was "entitled to receive all payments made by or on behalf of Cardholders on Accounts. . . . Retailers acknowledge and agree that they have no right, title or interest in or to . . . any payments made by or on behalf of Cardholders on Accounts or any proceeds with respect to the accounts." CP at 136. All marketing and promotional materials given to customers had to "clearly disclose that Bank is the owner and creditor on all Accounts." CP at 134. All PLCC services were to be "performed and controlled directly" by the Bank. CP at 49.

## III. JOINT MARKETING AND PROFIT AND LOSS SHARING

Lowe's and the Bank jointly marketed and promoted PLCCs. As an incentive to Lowe's to promote the use of the PLCCs, the Bank and Lowe's agreed to share profits and losses associated with the accounts.

Under the agreements' terms, Lowe's was entitled to additional profits generated by the PLCC portfolio once the Bank reached its target rate of return. Lowe's and the Bank settled the

profit-sharing obligations on a monthly basis after balancing the revenues generated by finance charges, fees, debt insurance premiums, and other services against program expenses, including net write-offs.

In exchange for the benefits Lowe's received from the PLCC agreements, including sharing profits and "giving its customers increased access and incentives to purchase additional merchandise," Lowe's agreed to "pay to the Bank[] any amounts that the Cardholders failed to pay on their PLCC accounts, up to" a specified cap.[1]  CP at 453-54.  The defaulted accounts Lowe's guaranteed under the profit-sharing agreements included the purchase prices and retail sales taxes for Lowe's products that cardholders had failed to repay the Bank.  To satisfy Lowe's obligation under the profit-sharing agreements' guarantee provision, the Bank reduced Lowe's monthly share of profit distributions up to a specified percentage of anticipated average net receivables on the PLCC accounts. The Bank was responsible for losses on defaulted accounts exceeding the cap.

The agreements stated that Lowe's "and not Bank shall have the right to claim any available sales tax deductions related to Net Write-Offs borne by" Lowe's.  CP at 454, 523, 613, 696, 782.

When a customer defaulted on its PLCC account, the Bank, not Lowe's, possessed the accounts receivable and had authority to write off the uncollectible debt on its books and records. CP at 113 ("[The Bank] has the receivables and liabilities, along with anything else on their books, and Lowe's does not have a receivable or liability on its books and records at all."); CP at 945 ("[The Bank] owns the receivable and [Lowe's] do[es] not make an entry when an account is

---

[1] Lowe's calls this clause the "Bad Debt Guarantee."  Br. of Appellant at 9.  For clarity, we use the term "profit-sharing reduction" to describe the amount that Lowe's profits were reduced under the profit-sharing agreements to cover a portion of Lowe's losses from defaulted PLCC accounts.

uncollectible.").  Although Lowe's books and records reflected Lowe's profit-sharing reductions, Lowe's books and records did not reflect any accounts receivable on the PLCC accounts nor unpaid debt obligations owed to Lowe's by cardholders.

IV.  PROCEDURAL HISTORY

Throughout the relevant assessment period, Lowe's filed federal corporate income tax returns.  Under 26 U.S.C. § 166, Lowe's deducted its profit-sharing reductions as "Bad Debts" on line 15 of the tax returns.  CP at 846.  The Internal Revenue Service (IRS) audited these returns and proposed no adjustments to Lowe's bad debt deductions.[2]

Lowe's also claimed a Washington retail sales tax credit under RCW 82.08.037[3] and retailing B&O tax deduction under RCW 82.04.4284[4] for Lowe's profit-sharing reductions.  The DOR audited Lowe's and determined that Lowe's had improperly claimed bad debt sales tax credits and B&O tax deductions on the defaulted PLCC accounts.

---

[2] Our opinion refers to Lowe's bad debts from its profit-sharing reductions as "profit-sharing bad debts."

[3] Three versions of RCW 82.08.037 were in effect during the assessment period at issue here. *See* former RCW 82.08.037 (1982) (effective from 1982 to June 30, 2004); former RCW 82.08.037 (2004) (effective from July 1, 2004 to June 30, 2008); former RCW 82.08.037 (2007) (effective from July 1, 2008 to April 30, 2010) (The statute was also amended in 2003, but that amendment was replaced by the 2004 amendment.).  The legislature amended this statute again in 2010. *See* LAWS OF 2010, ch. 23, § 1502.  Because there is no relevant distinction between any of these versions of the statute, we cite to the current version of the statute.

[4] Two versions of RCW 82.04.4284 were in effect during the assessment period at issue here. *See* former RCW 82.04.4284 (1980); former RCW 82.04.4284 (2004).  Because there is no relevant distinction between these two versions of the statute, we cite to the current version.

No. 50080-9-II

After these audits, the DOR assessed retail sales taxes and retailing B&O taxes against Lowe's. Lowe's paid in full both assessments. Lowe's filed an appeal under RCW 82.32.180 seeking a retail sales tax and retailing B&O tax refund.

The parties filed cross motions for summary judgment. The superior court ruled that under *Home Depot USA, Inc. v. Department of Revenue*,[5] the DOR properly denied Lowe's tax refund. Consequently, the superior court granted the DOR's summary judgment motion and denied Lowe's summary judgment motion. Lowe's appeals.

ANALYSIS

I. PRINCIPLES OF LAW

A. STANDARD OF REVIEW

We review a summary judgment order de novo, and we perform the same inquiry as the superior court. *Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wn.2d 790, 796-97, 123 P.3d 88 (2005). We consider all the facts submitted to the superior court and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). The moving party is entitled to summary judgment if it shows that the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Sheehan*, 155 Wn.2d at 797; CR 56(c).

---

[5] 151 Wn. App. 909, 215 P.3d 222 (2009).

B. RETAIL SALES TAX BACKGROUND

Washington imposes a 6.5 percent tax on each retail sale of tangible personal property. RCW 82.08.020(1)(a). The tax is based on the "'selling price,'" which means "the total amount of consideration" for which a good is sold, without deduction for the seller's overhead expenses or any other expenses whatsoever and without deduction on account of losses. RCW 82.08.010(1). The buyer has the primary obligation to pay the sales tax, but the seller has the duty to remit sales tax even if no tax is collected at the time of sale. RCW 82.08.050(1); *AARO Med. Supplies, Inc. v. Dep't of Revenue*, 132 Wn. App. 709, 716, 132 P.3d 1143 (2006). Sales taxes paid by the seller on the buyer's behalf but not paid from the buyer to the seller are a debt owed by the buyer to the seller. *Home Depot*, 151 Wn. App. at 917.

"A seller is entitled to a credit or refund for sales taxes previously paid on bad debts, as that term is used in 26 U.S.C. Sec. 166." RCW 82.08.037(1). In *Puget Sound National Bank v. Department of Revenue*, our Supreme Court stated that "RCW 82.08.037 has three requirements: (1) the seller must be a person, (2) making sales at retail, and (3) entitled to a refund for sales taxes previously paid on debts which are deductible as worthless for federal income tax purposes." 123 Wn.2d 284, 287, 868 P.2d 127 (1994). The legislative purpose of RCW 82.08.037 is to provide a *remedy for sellers that paid taxes they could not collect from the buyer*. *Home Depot*, 151 Wn. App. at 917, 920-21.

In addition to recognizing tax credits and refunds for bad debts resulting from retail sales tax unpaid by consumers under RCW 82.08.037, Washington law separately recognizes tax credits and deductions for bad debts that result from *other sources*, including B&O tax bad debts (RCW 82.04.4284).

The B&O tax applies to "'virtually all business activities carried on within the state.'" *Steven Klein, Inc. v. Dep't of Revenue*, 183 Wn.2d 889, 896, 357 P.3d 59 (2015) (internal quotation marks omitted) (quoting *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 149, 3 P.3d 741 (2000)). Various rates apply to different business activities. *Steven Klein, Inc.*, 183 Wn.2d at 897. For those making retail sales, the retailing B&O tax applies at the rate of .471 percent of "the gross proceeds of sales of the business." RCW 82.04.250(1). When computing B&O tax, a party may deduct "from the measure of tax bad debts, as that term is used in 26 U.S.C. Sec. 166 . . . on which tax was previously paid." RCW 82.04.4284(1).

Until 2018, the DOR's regulations governing bad debt credits, refunds, and deductions under RCW 82.08.037 and RCW 82.04.4284 include the following:

> Washington credits, refunds, and deductions for bad debts are based on federal standards for worthlessness under section 166 of the Internal Revenue Code [(IRC)]. . . .
> > (2) **Retail sales and use tax**.
> > (a) **General rule**. Under RCW 82.08.037 and 82.12.037, sellers are entitled to a credit or refund for sales and use taxes previously paid on "bad debts" under section 166 of the [IRC]. . . . Taxpayers may claim the credit or refund for the tax reporting period *in which the bad debt is written off as uncollectible* in the taxpayer's books and records and would be eligible for a bad debt deduction for federal income tax purposes. . . .
> > . . . .
> > (3) **Business and occupation tax**.
> > (a) **General rule**. Under RCW 82.04.4284, taxpayers may deduct from the measure of B&O tax "bad debts" under section 166 of the [IRC], as amended or renumbered as of January 1, 2003, on which tax was previously paid.

Former WAC 458-20-196(1)(c)-(3) (2010) (emphasis added).[6] The unpaid debt obligation must have been reported as income, and debts from unpaid fees or unrealized profits do not qualify. 26 C.F.R. § 1.166-1(a), (c), (e).

"Taxes are presumed to be just and legal, and the burden is on the taxpayer to prove that the tax is incorrect." *AOL, LLC v. Dep't of Revenue*, 149 Wn. App. 533, 554, 205 P.3d 159 (2009) (citing *Ford Motor Co. v. City of Seattle*, 160 Wn.2d 32, 41, 156 P.3d 185 (2007)). The taxpayer seeking a refund has the burden of proving that the DOR incorrectly assessed the tax and it is entitled to a refund. RCW 82.32.180; *Wash. Imaging Servs., LLC v. Dep't of Revenue*, 171 Wn.2d 548, 555, 252 P.3d 885 (2011). Courts focus on substance rather than form when determining tax classifications. *First Am. Title Ins. Co. v. Dep't of Revenue*, 144 Wn.2d 300, 303, 27 P.3d 604 (2001).

## II. BAD DEBT TAX REFUND

The parties agree there are no genuine issues of material fact. The parties dispute whether, as a matter of law, Lowe's was entitled to a bad debt retail sales tax refund under RCW 82.08.037 and a corresponding retailing B&O tax refund under RCW 82.04.4284 for Lowe's profit-sharing bad debts. We agree with the DOR that Lowe's was not entitled to a sales or B&O tax refund.[7]

---

[6] Given the similarity between provisions governing the bad debt retail sales tax and bad debt B&O tax exemptions, Lowe's does not distinguish between them in its analysis.

[7] Lowe's refers to these provisions together as the "Bad Debt Statutes" throughout its briefing and argues that "Washington law requires uniform treatment of bad debts losses for purposes of sales tax and B&O tax." Br. of Appellant at 15. Lowe's primarily cites authority regarding the retail sales tax credit under RCW 82.08.037 and argues that the authority controls Lowe's B&O tax eligibility because the standards governing eligibility for the retail sales tax exemption and a retailing B&O tax deduction are substantially similar. Our analysis focuses on Lowe's retail sales tax exemption claim because the parties' briefing and legal authority focused almost exclusively

## A. BAD DEBT REFUND REQUIREMENTS

We first identify the requirements Lowe's must satisfy to be eligible for a tax refund under RCW 82.08.037. Lowe's argues that its profit-sharing reductions qualify for a tax refund under RCW 82.08.037 because the reductions were deductible under 26 U.S.C. § 166. The DOR asserts that in addition to qualifying for a bad debt deduction under 26 U.S.C. § 166, Lowe's must also show that its profit-sharing reductions are "sales taxes previously paid" and "written off as uncollectible" to obtain a tax refund under RCW 82.08.037(1); WAC 458-20-196(2)(a). We agree with the DOR.

### 1. PRINCIPLES OF LAW

RCW 82.08.037(1) provides that "[a] seller is entitled to a credit or refund for *sales taxes previously paid* on bad debts, as that term is used in 26 U.S.C. Sec. 166." (Emphasis added.) Taxpayers may claim a credit or refund under RCW 82.08.037 only "for the tax reporting period in which the *bad debt is written off as uncollectible in the taxpayer's books and records* and would be eligible for a bad debt deduction for federal income tax purposes." Former WAC 458-20-196(2)(a) (emphasis added). A party is eligible for a state tax refund under RCW 82.08.037 only when it has bad debt "directly attributable" to a retail sales tax payment. *Home Depot*, 151 Wn. App. at 922. In addition, the party seeking the state bad debt deduction must be the one holding the bad debt as well as the one to whom repayment on such debt would be made. *Home Depot*, 151 Wn. App. at 922.

---

on the retail sales tax issue. To the extent that Lowe's relies on its failed retail sales tax credit claim to support its eligibility for the B&O deduction, Lowe's arguments necessarily fail.

A deductible bad debt under 26 U.S.C. § 166 is defined broadly and must "arise[] from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." 26 C.F.R. § 1.166-1(c). Bad debts under 26 U.S.C. § 166 can result from a variety of transactions, including losses on unpaid loans or payments on a guaranty. 26 C.F.R. §1.166-9(a); *see, e.g.*, *Trent v. C.I.R.*, 291 F.2d 669, 671 (2d Cir. 1961); *First Trust & Sav. Bank of Davenport, Iowa v. United States*, 301 F. Supp. 194, 197 (S.D. Iowa, 1969).

2.    FEDERAL DEDUCTIBILITY NOT SOLE REQUIREMENT

Contrary to Lowe's assertions, whether Lowe's qualified for a federal bad debt deduction is not at issue. Here, the DOR agrees that Lowe's profit-sharing reductions qualified as federal bad debts arising from a guarantor loss under 26 C.F.R. § 1.166-9(a). Wash. Court of Appeals oral argument, *Lowe's Home Centers, LLC, v. Dep't of Revenue*, No. 50080-9-II (Feb. 21, 2018), at 22 min., 40 sec. through 25 min., 24 sec. (on file with court). The core of the parties' disagreement is whether there are *additional* requirements to obtain a state tax refund and, if so, whether Lowe's has satisfied the requirements.

However, the fact that a bad debt is deductible under federal law is not itself sufficient to support a tax credit under RCW 82.08.037. Although there are many forms of federal bad debt that may be claimed under 26 U.S.C. § 166, 26 C.F.R. § 1.166-1(a), (c), and 26 C.F.R. § 1.166-9(a), only bad debts "on sales taxes previously paid" that are "written off as uncollectible" qualify for a retail sales tax refund. RCW 82.08.037(1); former WAC 458-20-196(2)(a). Thus, Lowe's has the burden to establish that its profit-sharing reductions are "sales taxes previously paid" and "written off as uncollectible." RCW 82.08.037(1); former WAC 458-20-196(2)(a). To the extent

Lowe's asserts that it qualifies for a state tax refund because its profit-sharing reductions were deductible as bad debts under 26 U.S.C. § 166, its claim fails.

B. "SALES TAXES PREVIOUSLY PAID"

Lowe's attempts to frame its federal bad debts as debts on "sales taxes previously paid" because its profit-sharing reductions covered some of the Bank's losses on PLCC accounts that included charges for retail sales tax. RCW 82.08.037(1). The DOR asserts that Lowe's profit-sharing bad debts are not debts on "sales taxes previously paid" because (1) Lowe's received payment on the gross proceeds for retail sale PLCC transactions and (2) under *Home Depot*, Lowe's profit-sharing bad debts were not "directly attributable" to a retail sale but instead were attributable to its separate contractual agreements with the Bank. RCW 82.08.037(1); 151 Wn.2d at 922. We agree with the DOR.

1. RETAIL SALE PROCEEDS RECEIVED

The parties dispute whether Lowe's receipt of gross proceeds on the PLCC retail sales eliminated any debt on "sales taxes previously paid" by Lowe's. RCW 82.08.037(1). We agree with DOR that because Lowe's received proceeds from the Bank for the PLCC retail sale transactions, Lowe's had no debts on "sales taxes previously paid." RCW 82.08.037(1).

RCW 82.08.037(1) provides that "[a] seller is entitled to a credit or refund for sales taxes previously paid on bad debts, as that term is used in 26 U.S.C. Sec. 166." A bad debt under 26 U.S.C. § 166 must "arise[] from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." 26 C.F.R. § 1.166-1(c). Importantly, courts focus on the substance of a transaction to determine how it is classified for tax purposes, rather than relying on the characterization of transactions provided in taxpayers' contracts with

third parties. *See First Am. Title Ins. Co.*, 144 Wn.2d at 303. Retail sales tax is based on the "'[s]elling price,'" which means "the total amount of consideration" for which a good is sold. RCW 82.08.010(1)(a)(i). Sales taxes paid by the seller on behalf of the buyer but not paid from the buyer to the seller are a debt owed by the buyer to the seller. *Home Depot*, 151 Wn. App. at 917.

Here, when a cardholder made a purchase using a PLCC, the Bank forwarded to Lowe's full payment for the purchase and all corresponding taxes within one to two days. Lowe's thus received the "'[s]elling price'" from the Bank. RCW 82.08.010(1)(a)(i). Lowe's accounted for PLCC transactions as "cash and cash equivalents," the same term used for customers' payments with cash, check, or other credit cards. CP at 60. In addition, Lowe's books and records did not reflect any unpaid debt obligations on defaulted credit card accounts, and Lowe's did not carry any of the cardholders' accounts on its books. Once the Bank paid Lowe's proceeds for the selling price including sales tax, any debt for sales tax by the customer to Lowe's was satisfied. *See Home Depot*, 151 Wn. App. at 921-22. Because Lowe's had actually collected the sales tax that it remitted to the State, it had no bad debt on sales tax paid to the DOR.

Lowe's profit-sharing reductions did not result in a bad debt on sales tax previously paid because the reductions did not cover sales tax that Lowe's remitted to the State that the buyer failed to repay but instead were profit-sharing reductions that covered some of the Bank's PLCC losses for credit it extended to cardholders. *See Home Depot*, 151 Wn. App. at 921-11; 26 C.F.R. § 1.166-9(a). As such, Lowe's profit-sharing bad debt resulted from the bargained-for profit-sharing agreements and not debts on sales tax owed to Lowe's on a retail sales transaction.

Although Lowe's correctly asserts that the PLCC agreements stated that Lowe's had the right to "'claim any available sales tax deductions related to'" its profit-sharing reductions, this contract provision does not control our characterization of the transactions for tax purposes. CP at 523. A private agreement does not disrupt a party's statutory tax obligations or the proper characterization of its transactions for tax purposes. *Wash. Imaging Services*, 171 Wn.2d at 556-57.

Because Lowe's profit-sharing reductions were not bad debts on "sales taxes previously paid," they did not qualify for a state sales tax refund under RCW 82.08.037(1).

2.      *HOME DEPOT*

To further support its argument that Lowe's federal bad debts were not debts on "sales taxes previously paid," the DOR relies on *Home Depot*. We agree with the DOR that under *Home Depot*, Lowe's profit-sharing bad debts are not "directly attributable" to retail sales and thus not subject to a tax refund under RCW 82.08.037. 151 Wn. App. at 922.

a.      *HOME DEPOT* HOLDING

Lowe's argues that *Home Depot* does not require a taxpayer to "own" and "initiate" the bad debt to obtain a state tax refund under RCW 82.08.037. Appellant's Reply Br. at 12, 16. The DOR asserts that under *Home Depot*, a retailer cannot obtain a state tax refund on bad debts arising from PLCCs it does not own and that the retailer did not initiate because such debts are not "directly attributable" to retail sales. 151 Wn. App. at 922. We agree with the DOR.

In *Home Depot*, we addressed whether a retailer, Home Depot, qualified for a sales tax refund under RCW 82.08.037 on service fees that the retailer Home Depot paid on bank-owned PLCCs. 151 Wn. App. at 912-13. Home Depot contracted with a bank to establish a PLCC

14

program. *Home Depot*, 151 Wn. App. at 913. The bank was the exclusive owner of the accounts and bore the risk of all credit losses, and the bank took a federal bad debt deduction while Home Depot did not. *Home Depot*, 151 Wn. App. at 913, 914. The bank paid Home Depot the sales proceeds on PLCC transactions daily and subtracted service fees, which were calculated in part to cover the bank's losses on uncollectible accounts. *Home Depot*, 151 Wn. App. at 914. Home Depot raised a similar argument to Lowe's, claiming that as long as it "actually bore the risk of loss from the defaulted debts" by paying the service fees, it was entitled to a state tax refund under RCW 82.08.037 for debts the bank claimed as bad debts. *Home Depot*, 151 Wn. App. at 915.

We held that Home Depot had no debt "directly attributable" to a retail sales tax payment and thus was not eligible for a state tax refund under RCW 82.08.037. *Home Depot*, 151 Wn. App. at 922. We explained that at the time a PLCC cardholder purchased an item on their PLCC, Home Depot paid the sales tax due to DOR and this created a statutory "debt" due from the buyer to the seller. *Home Depot*, 151 Wn. App. at 921-22. However, when the bank transmitted the purchase price to Home Depot, the debt between Home Depot and the buyer "ceased to exist." *Home Depot*, 151 Wn. App. at 922. At that point, Home Depot no longer held *any* debt "directly attributable" to the retail sale and thus could not qualify for the state bad debt deduction. *Home Depot*, 151 Wn. App. at 922.

Contrary to Lowe's and the dissent's assertions, *Home Depot* supports the DOR's position that a bad debt "directly attributable" to a retail sale and thus eligible for the state tax refund must be *owned* by the taxpayer and *initiated* by a seller. 151 Wn. App. at 922. The *Home Depot* court emphasized that "the party seeking the [state] deduction must be the one holding the bad debt [on

the retail sale] as well as the one to whom repayment on such a debt would be made." 151 Wn. App. at 922.

In addition, we stated that retailers that only extend credit to their customers and "finance their *own* retail sales" belong to the class of persons entitled to utilize Washington's bad debt tax statutes. *Home Depot*, 151 Wn. App. at 927 (emphasis added). The defaulted PLCC accounts that Home Depot's service fees helped to cover were *initiated* by the Bank rather than by Home Depot and therefore were not initiated by the seller. *See Home Depot*, 151 Wn. App. at 923.

Further, Home Depot did not own the debt, as evidenced by the fact that it had no interest in the PLCC debts, it had no right to collect any unpaid sums from the buyer, and it did not deduct bad debt on its federal tax returns.[8] *Home Depot*, 151 Wn. App. at 922. Because Home Depot did not own or initiate the PLCC accounts and resulting losses that Home Depot's service fees helped cover, Home Depot's payments were not "directly attributable" to a retail sale. *Home Depot*, 151 Wn. App. at 922.

As DOR asserts, the only Supreme Court decision that has addressed RCW 82.08.037 supports *Home Depot*'s holding that a bad debt must be owned by the taxpayer and initiated by the seller in a retail sales transaction to qualify for a tax refund under RCW 82.08.037.

In *Puget Sound*, our Supreme Court held that where a seller extends a loan to a buyer through an installment contract and later assigns the outstanding installment contract to a third party, the third party *assumes the seller's rights* under the contract, including the right to collect the sales contract debt from the buyer and claim any bad debt from the sales contracts on its state

---

[8] Lowe's argues that under *Home Depot*, the party that takes the federal bad debt deduction is entitled to a tax refund under RCW 82.08.037. For the reasons discussed below, this claim fails.

tax returns. *Puget Sound*, 123 Wn.2d at 293. The bank that owned the accounts in *Puget Sound* was allowed to claim a state bad debt refund on uncollectible sales contracts because it "stepped into the [seller's] shoes" and was thus entitled to the seller's tax benefits for the loans that were initiated by the seller and involved *debts owed by the buyer to the seller* from the retail sale. 123 Wn.2d at 293. *Puget Sound* supports that loans extended directly by the seller to a buyer in a retail sales transaction qualify for the state bad debt deduction. 123 Wn.2d at 293.

In light of *Puget Sound*'s reasoning, we agree with the DOR that *Home Depot* authorizes a tax refund under RCW 82.08.037 only where the bad debt is "directly attributable" to a retail sale, which requires that the debt be owned by the taxpayer and originated with the seller. 151 Wn. App. at 922.

b.      *HOME DEPOT* APPLICABLE HERE

*Home Depot*'s reasoning is controlling in this case. Like Home Depot, Lowe's contracted with the Bank and established a PLCC program. As in Home Depot's agreements, Lowe's agreements with the Bank provided that the Bank was the exclusive owner of all PLCC accounts. In addition, just as Home Depot paid fees to cover the bank's bad debt losses from defaulted accounts, Lowe's, under the profit-sharing agreements, reduced its monthly share of profit distributions to cover a portion of the Bank's bad debt losses. And just as RCW 82.08.037 did not provide a retail sales tax refund for Home Depot's service fees paid to the bank, Lowe's is not entitled to such a deduction for its payments that covered the Bank's PLCC account losses. This is because, like Home Depot, Lowe's *did not incur a bad debt loss "directly attributable" to a retail sale*. *Home Depot*, 151 Wn. App. at 922 (emphasis added).

In Home Depot's and Lowe's cases, the buyer's "statutory debt" owed to Lowe's under RCW 82.08.050 as well as the underlying debt for the purchase price, was discharged when the banks transmitted payments for the PLCC transactions to the stores. *Home Depot*, 151 Wn. App. at 922. Like Home Depot, Lowe's "no longer held any 'debt' . . . directly attributable to its sales tax payment to DOR" because Lowe's did not initiate and own the PLCC accounts on which there were bad debts. *Home Depot*, 151 Wn. App. at 922.

The Bank, not Lowe's, extended credit to the cardholders. And the profit-sharing reductions that covered some of the Bank's losses on defaulted PLCCs were initiated by the Bank. Consequently, Lowe's bad debts resulted from its role as a guarantor-creditor of the Bank's PLCC accounts rather than from Lowe's role as a seller. *See Home Depot*, 151 Wn. App. at 922. Thus, under *Home Depot*, Lowe's guarantor bad debts under 26 C.F.R. § 1.166-9(a) are not "directly attributable" to a retail sale. 151 Wn. App. at 922.

In addition, Lowe's profit-sharing bad debt was not owned by Lowe's. The undisputed facts show that Lowe's had "no right, title or interest" in the PLCC accounts. CP at 136. The Bank had the exclusive right to the cardholder payments. All marketing and promotional materials given to customers stated that the Bank is the *owner and creditor on all accounts*. All PLCC services were to be "performed and controlled directly" by the Bank. CP at 49. When a customer defaulted on its PLCC account, the Bank, not Lowe's, wrote off the uncollectible debt on its books and records. Lowe's books and records did not reflect any *unpaid debt obligations owed to Lowe's* on the defaulted PLCC accounts. Based on these facts, Lowe's was not owed repayment by cardholders for its profit-sharing reductions and did not own the PLCC debt.

Lowe's profit-sharing bad debts, which it did not initiate or own, were attributable to its bargained-for profit-sharing agreements and not "directly attributable" to a retail sale. *Home Depot*, 151 Wn. App. at 922.

c.      LOWE'S ARGUMENTS DISTINGUISHING *HOME DEPOT* FAIL

Lowe's argues that its situation is distinguishable from *Home Depot* because, unlike Home Depot, Lowe's bore the risk of loss on the credit accounts and took the federal bad debt deduction. Both arguments fail.

First, Lowe's claims that in contrast to Home Depot, Lowe's bore the risk of loss on the PLCC accounts because it ultimately held the debt and was owed repayment by cardholders. Lowe's argues that because it paid the Bank "the unpaid balances due on the written-off PLCC accounts, which included any related sales taxes incurred on the sale[,]" Lowe's, "by operation of law . . . became 'the one holding the debt' and the 'one to whom repayment on such debt would be made.'" Br. of Appellant at 37 (quoting CP at 453-57, 2668). It claims that as a "guarantor" that paid portions of cardholder's debts owed to the Bank, Lowe's stepped into the shoes of the Bank and had a right to be repaid for its payments on cardholders' accounts.

But this argument fails because, contrary to Lowe's assertion that it "by operation of law," became the party that held the debt and was owed repayment, the undisputed facts show that under the PLCC agreements, Lowe's did not own the PLCC account debt and cardholders did not owe repayment to Lowe's or provide payments directly to Lowe's. Br. of Appellant at 37. Notably, the profit-sharing agreements explicitly provided that the Bank exclusively owned the debt and had the exclusive right to be repaid. In addition, Lowe's disclosures to the federal government during its IRS audit state that "[the Bank] owns the receivable and does not remit cash to Lowe's"

and Lowe's does not "make an entry when an account is uncollectible." CP at 945. These undisputed facts establish that the Bank and not Lowe's owned the PLCC account debt and had the right to be repaid by cardholders.

Second, Lowe's claims that it took the federal bad debt deduction because its profit-sharing reductions qualify as "bad debts" under 26 C.F.R. § 1.166-9. Lowes asserts—and the dissent agrees—that Home Depot was ineligible for the federal bad debt deduction because Home Depot's payment of service charges did not qualify as bad debt, whereas Lowe's is eligible for the state tax refund under RCW 82.08.037 for its guarantor bad debt. Dissent at 33. Lowe's is correct that Home Depot did not take a federal bad debt deduction for the fees it paid to the bank, in contrast to Lowe's that took a federal bad debt deduction for its profit-sharing reductions that satisfied its guarantor obligation. And a party's failure to take a federal bad debt deduction is relevant to its eligibility for the state bad debt deduction. *Home Depot*, 151 Wn. App. at 922. But as discussed above, a party's federal bad debt deduction is not alone sufficient to obtain a state tax refund under RCW 82.08.037. There must be a nexus between the bad debt and the sale. Here, the buyer made a purchase using a PLCC. The Bank paid Lowe's in full for the sale. There is no bad debt from the sale. Instead, as discussed above, Lowe's bad debts resulted from its role as a guarantor-creditor rather than a seller, and Lowe's guarantor bad debts under 26 C.F.R. § 1.166-9(a) are not "directly attributable" to a retail sale. *Home Depot*, 151 Wn. App. at 922.

The *Home Depot* court noted a distinction between bad debts directly attributable to a retail sale and bad debts resulting from the cost of doing business, saying, "Simply because *someone* can deduct the unpaid sales tax as a bad debt does not transform an ordinary business expense or loss into a refundable sales tax debt under former RCW 82.08.037." 151 Wn. App. at 924. The

20

*Home Depot* court recognized that a party's federally deductible bad debt does not automatically qualify for a state tax refund under RCW 82.08.037 because a party's bad debt must be "directly attributable" to a debt on a retail sale to qualify for a state refund. 151 Wn. App. at 922. And as discussed above, Lowe's federal bad debts resulted from Lowe's profit-sharing reductions to cover some of the Bank's PLCC account losses and not from debts Lowe's owned and initiated that are "directly attributable" to a retail sale. *Home Depot*, 151 Wn. App. at 922.

Lowe's also discusses cases litigated by Home Depot in other states that addressed nearly identical claims as those at issue in our State's *Home Depot*. All other states' appellate courts concluded, as did our court, that Home Depot was not entitled to a state bad debt refund based on varied reasoning. But those cases are consistent with our *Home Depot* decision.[9] Although Home Depot's lack of federally deductible bad debt was relevant to some of those decisions, many state courts held that Home Depot had no bad debt attributable to PLCC retail transactions because the bank paid the store in full for the purchased goods. *See, e.g.*, *Home Depot USA, Inc. v. Arizona Dep't of Revenue*, 230 Ariz. 498, 502, 287 P.3d 97 (2012).

---

[9] *See, e.g.*, *Home Depot USA, Inc. v. Arizona Dep't of Revenue*, 230 Ariz. 498, 502, 287 P.3d 97 (2012) ("Because Taxpayer received the full amount it was owed, there were no debts—much less bad debts[—]that served to reduce the gross amount that it realized from its sales of goods."); *Magee v. Home Depot U.S.A., Inc.*, 95 So.3d 781, 793 (Ala. Civ. App. 2011) (holding that the state's bad debt regulations "'clearly envision that the retailer must extend credit to the customer and own the account, and that if the account is not paid, the retailer must be the party that deducts the debt as uncollectible'"); *In the Matter of Home Depot USA, Inc. v Tax Appeals Tribunal of the State of N.Y.*, 68 A.D.3d 1571, 1573, 893 N.Y.S.2d 313 (N.Y. App. Div. 2009) ("Notably, inasmuch as the debts in question were owed to the finance companies and petitioner was paid in advance by the finance companies, [Home Depot] did not actually have any uncollectible receipts. Indeed, [Home Depot] recorded accounts receivable from the finance companies, not from the individual customers.").

Because Lowe's received payment on the gross proceeds for retail sale PLCC transactions and because Lowe's profit-sharing bad debts were not "directly attributable" to a retail sale, Lowe's profit-sharing bad debts are not debts on "sales taxes previously paid" and thus do not qualify for a tax refund under RCW 82.08.037(1).[10] *Home Depot*, 151 Wn. App. at 922.

3.    LOWE'S CANNOT "NEGATE" SALES TAX PAYMENT

The dissent would hold that Lowe's bad debts were on "'sales tax previously paid'" because Lowe's "*initially* received reimbursement for" sales taxes but that the sales tax payment was "negated" by Lowe's profit-sharing reductions when "Lowe's became responsible for the amounts of the sales taxes and B&O taxes." Dissent at 33. But as discussed above, the dissent overlooks that the bad debts Lowe's incurred through its profit-sharing reductions were from a guarantee of credit accounts and not "directly attributable" to the retail sale. *Home Depot*, 151 Wn. App. at 922. Furthermore, the dissent incorrectly assumes that sellers such as Lowe's have authority to "negate" a buyer's sales tax payment. Contrary to the dissent's position, once the buyer-cardholders satisfied their sales tax obligation, Lowe's did not "negate" their sales tax payment through its contract with the Bank.

Once the seller collects retail sales tax from the buyer, the collected tax,

---

[10] Lowe's also cites to an Oklahoma administrative decision as "persuasive authority" that Lowe's is entitled to a Washington State tax refund. Order, No. P-09-195-H, 2015 WL 1530422 (Okla. Tax Comm'n Feb. 26, 2015). The Oklahoma administrative law judge (ALJ) determined that Lowe's, in a case factually similar to this case, was entitled to an Oklahoma bad debt tax refund. But as the DOR asserts, this Oklahoma case is unpersuasive for numerous reasons. Most importantly, the Oklahoma ALJ held that the Oklahoma state tax refund statute did not require that a debt be directly attributable to a retail sale to be eligible for a refund. This is contrary to our State's statute and our court's decision in *Home Depot*, which, unlike the Oklahoma decision, has precedential value in this case.

is deemed to be held in trust by the seller until paid to the [DOR]. Any seller who appropriates or converts the tax collected to the seller's own use or to any use other than the payment of the tax to the extent that the money required to be collected is not available for payment on the due date as prescribed in this chapter is guilty of a gross misdemeanor.

RCW 82.08.050(2). In addition, if any seller fails to collect the retail sales tax from the buyer or, having collected the tax, fails to pay it to the DOR, "whether such failure is the result of the seller's own acts or the result of acts or conditions beyond the seller's control, the seller is, nevertheless, personally liable to the state for the amount of the tax." RCW 82.08.050(3).

As discussed above, Lowe's, as the seller, collected the buyer-cardholders' sales tax when the Bank transmitted sale proceeds to Lowe's on behalf of the buyer-cardholders. *See* RCW 82.08.050(2). Once Lowe's received full payment for the retail transactions, the buyer-cardholders' obligation to pay sales tax was satisfied, and RCW 82.08.050(2)-(3) required Lowe's to provide the retail sales tax payment to the DOR. No legal authority supports the dissent's position that Lowe's can "negate" the buyer-cardholders' satisfaction of the retail sales tax and circumvent the obligation to pay DOR sales taxes under RCW 82.08.050(2)-(3) after the buyers' tax obligation was satisfied.

The bad debts Lowe's incurred from its profit-sharing reductions were bad debts on a guarantee under 26 C.F.R. § 1.166-9(a) resulting not from a retail sales but instead from the Bank's credit agreements with cardholders and profit-sharing agreements with Lowe's. As such, Lowe's was not eligible for a refund under RCW 82.08.037(1) because the profit-sharing reductions were not bad debts on "sales taxes previously paid" and were not "directly attributable" to a retail sale. *Home Depot*, 151 Wn. App. at 922.

## C. "WRITTEN OFF AS UNCOLLECTIBLE"

The parties dispute whether, as a matter of law, Lowe's notations in its books regarding its profit-sharing reductions satisfy the requirement under RCW 82.08.037 that the bad debt be "'written off as uncollectible in the taxpayer's books and records.'" Appellant's Reply Br. at 4 (quoting WAC 458-20-196(2)(a)).. We agree with the DOR that as a matter of law, Lowe's did not write off its bad debts as uncollectible and thus does not qualify for a state bad debt refund. Former WAC 458-20-196(2)(a).

> Under RCW 82.08.037 and 82.12.037, sellers are entitled to a credit or refund for sales and use taxes previously paid on "bad debts" under section 166 of the [IRC], as amended or renumbered as of January 1, 2003. Taxpayers may claim the credit or refund for the tax reporting period in which the bad debt is written off as uncollectible in the taxpayer's books and records and would be eligible for a bad debt deduction for federal income tax purposes. However, bad debts do not include:
>     (i) Amounts due on property that remains in the possession of the seller until the full purchase price is paid;
>     (ii) Expenses incurred in attempting to collect debt;
> . . . .
>     (iv) The value of repossessed property taken in payment of debt.

Former WAC 458-20-196(2)(a).

The dissent argues that the write-off provision merely states "*when* a taxpayer can claim a credit or refund" and does not establish a requirement for a refund. Dissent at 35. But that interpretation is contrary to the plain meaning of the rule. Former WAC 458-20-196(2)(a) provides the conditions under which a party may claim a retail sales tax bad debt refund or credit. The regulation states that taxpayers may claim a refund for the tax reporting period in which the "bad debt is written off as uncollectible in the taxpayer's books and records." Former WAC 458-20-196(2)(a). Even if, as the dissent asserts, the provision merely establishes the appropriate time to claim a bad debt refund, a party that never writes off bad debt as uncollectible in its books and

records would in turn never be eligible for the bad debt refund or credit under former WAC 458-20-196(2)(a).

Lowe's is not eligible for a refund because it never wrote off the bad debt as uncollectible in its books and records. Lowe's customers who paid with PLCCs owed no debt to Lowe's, so Lowe's had no debt to write off. The record shows that the Bank, and not Lowe's, wrote off the bad debts on the PLCC accounts in its books and records because the customers owed the Bank, not Lowe's, debts on outstanding PLCC accounts. Under its PLCC agreements with the Bank, Lowe's had "no right, title or interest in the Accounts (including the Indebtedness)." CP at 145. Lowe's stated in depositions and disclosures during an IRS audit that the Bank owns the accounts receivable and that Lowe's does not make an entry when an account is uncollectible nor carry customers' unpaid PLCC obligations as an asset on its books and records. "Lowe's does not have a receivable or liability on its books and records at all" relating to the unpaid credit card debts. CP at 113.

To support that it wrote off its bad debt as uncollectible, Lowe's cites to the declaration of John Norris Aultman. The relevant portion of the declaration provides only that Lowe's recorded the amounts of its profit-sharing reductions to compensate the Bank for losses on PLCC accounts and "reflected in its books and records the net bad debts on PLCC accounts that were determined to be *uncollectible by the Banks*." CP at 455 (emphasis added). These statements are consistent with those offered by the DOR and show that the Bank, not Lowe's, had uncollectible debts.

Lowe's books and records reflected *payments Lowe's made to the Bank* that were federally deductible bad debts as a guaranty payment. But Lowe's books and records *did not* reflect any bad

debt on a retail sales owed by customers to Lowe's because no such debt existed. As such, Lowe's did not satisfy the write-off requirement under former WAC 458-20-196(2)(a).

Lowe's does not qualify for the tax refund under RCW 82.08.037 because its profit-sharing bad debt did not result from "sales taxes previously paid," its bad debt was not "directly attributable" to a retail sale as required under *Home Depot*, and it did not write off the debt on its books and records.[11] 151 Wn. App. at 922.

### III. EQUAL PROTECTION

Lowe's argues that the superior court's denial of its summary judgment motion on its refund claim violated its right to equal protection. Lowe's asserts that the DOR arbitrarily imposed an "ownership requirement" that does not exist in the bad debt tax statutes and thus treated Lowe's differently from other retailers within its class who remitted sales tax that they cannot collect from the buyer. Br. of Appellant at 47. The DOR argues that Lowe's equal protection rights were not violated because Lowe's is not in the same class as retailers who are able to claim a refund under RCW 82.08.037. We agree with the DOR.

### A. PRINCIPLES OF LAW

"We review constitutional issues de novo." *City of Seattle v. Evans*, 184 Wn.2d 856, 861, 366 P.3d 906 (2015), *cert. denied*, 137 S. Ct. 474 (2016).

---

[11] The DOR argues that even if Lowe's can establish that its profit-sharing reductions are bad debts on retail sales, Lowe's is still not entitled to summary judgment because Lowe's cannot meet its burden to prove the correct amount of the sales tax refund. Lowe's argues that it established the correct amount of the refund and that the DOR's cited authority is inapplicable. Because, as discussed above, Lowe's' profit-sharing reductions are not bad debts on retail sales, we need not reach whether Lowe's can establish the correct amount of a hypothetical sales tax refund.

Under the Fourteenth Amendment of the United States Constitution, no state shall "deny to any person within its jurisdiction the equal protection of the laws." This amendment protects a person from "'state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class.'" *Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County, W. Va.*, 488 U.S. 336, 345, 109 S. Ct. 633, 102 L. Ed. 2d 688 (1989) (quoting *Hillsborough v. Cromwell*, 326 U.S. 620, 623, 66 S. Ct. 445, 90 L. Ed. 2d 358 (1946)). A tax classification based on reasonable factual distinctions and policy preferences does not violate equal protection. *See Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 360, 93 S. Ct. 1001, 35 L. Ed. 2d 351 (1973).

Under article I, section 12 of the Washington Constitution, "[n]o law shall be passed granting to any citizen, class of citizens, or corporation . . . privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." For legislation to comply with article I, section 12 it must "'apply alike to all persons within the designated class'" and "'reasonable ground must exist for making a distinction between those who fall within the class and those who do not.'" *State ex rel. N. Pac. Ry. Co. v. Henneford*, 3 Wn.2d 48, 54, 99 P.2d 616 (1940) (quoting *State ex rel. Bacich v. Huse*, 187 Wash. 75, 80, 59 P.2d 1101 (1936), *overruled on other grounds by Puget Sound Gillnetters Ass'n v. Moos*, 92 Wn.2d 939, 603 P.2d 819 (1979)). An equal protection challenge to disparate tax treatment fails when "'any state of facts can reasonably be conceived that would sustain the classification.'" *Home Depot*, 151 Wn. App. at 926 (quoting *United Parcel Serv., Inc. v. Dep't of Revenue*, 102 Wn.2d 355, 368, 687 P.2d 186 (1984)).

## B. NO DISPARATE TREATMENT

DOR did not arbitrarily apply an "ownership requirement" to Lowe's that treated Lowe's differently than other parties within the same class as Lowe's asserts. Br. of Appellant at 47. Instead, it applied the standards provided in *Home Depot* that withstood Home Depot's equal protection challenge.

RCW 82.08.037 provides a tax benefit to retailers who extend credit to their customers and "finance their own retail sales"; RCW 82.08.037 does not extend the same tax benefits to a party who pays contractual fees to a third-party lender to finance PLCCs. *Home Depot*, 151 Wn. App. at 927. The *Home Depot* court concluded that the factual differences between these two methods of business amply support the distinction drawn by the legislature. 151 Wn. App. at 928. For example, "the two types of financing arrangements include different types of risks, in that . . . Home Depot receives instant (re)payment from [the bank] on all accounts, while a self-financing retailer does not." *Home Depot*, 151 Wn. App. at 928-29.

*Home Depot*'s equal protection analysis controls here. Contrary to Lowe's assertion, it is *not* in the same class as retailers who finance their own retail sales. As discussed above, Lowe's collected the sales tax owed by the buyer when the Bank transmitted the sale price within days of sale. Lowe's profit-sharing reductions, made as part of bargained-for agreements with the Bank, are not in the same class for taxation purposes as uncompensated losses a seller experiences when they themselves extend credit to customers. Thus, the superior court did not violate Lowe's equal protection rights.

IV. DUE PROCESS

Lowe's next provides one sentence of argument that the superior court violated Lowe's due process rights by denying its summary judgment motion and granting the DOR's summary judgment motion. Specifically, Lowe's states, "Likewise, by imposing arbitrary requirements on [Lowe's] that are neither authorized by statute nor promulgated as regulations, the [DOR] has denied [Lowe's] its right to a refund of overpaid sales and B&O taxes without due process of law, in violation" of the state and federal due process clauses. Br. of Appellant at 48. The DOR argues that the due process argument is waived because it was not raised in Lowe's complaint to the superior court. We hold that Lowe's argument is waived.

"'[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" *Kitsap County Consol. Housing Auth. v. Henry-Levingston*, 196 Wn. App. 688, 707, 385 P.3d 188 (2016) (alteration in original) (internal quotation marks omitted) (quoting *Crystal Ridge Homeowners' Ass'n v. City of Bothell*, 182 Wn.2d 665, 679, 343 P.3d 746 (2015)). In addition, we do not consider arguments raised for the first time on appeal unless the new argument raises a manifest error affecting a constitutional right. RAP 2.5(a)(3); *Booker Auction Co. v. Dep't of Revenue*, 158 Wn. App. 84, 90, 241 P.3d 439 (2010). Where a party, in raising its unpreserved argument, does not claim that the trial court committed a manifest error affecting a constitutional right, we will not address it. *Booker Auction Co.*, 158 Wn. App. at 90.

Lowe's single sentence in support of its due process argument does not warrant judicial consideration. *See Henry-Levingston*, 196 Wn. App. at 707. In addition, Lowe's fails to assert that its due process argument raises a manifest error affecting a constitutional right, so we address the argument no further. *Booker Auction Co.*, 158 Wn. App. at 90.

No. 50080-9-II

CONCLUSION

As a matter of law, based on undisputed facts, Lowe's does not qualify for the tax refund because its bad debt did not result from "sales taxes previously paid," its bad debt was not "directly attributable" to a retail sale as required under *Home Depot*, and it did not write off the debt on its books and records. RCW 82.08.037(1); 151 Wn. App. at 922. In addition, the superior court did not violate Lowe's equal protection rights, and we do not address the inadequately briefed due process issue.

We affirm.

JOHANSON, J.

I concur:

MELNICK, J.

30

MAXA, C.J. (dissenting) – The majority unnecessarily complicates what should be a straightforward analysis of the applicable Washington statutes, federal statute, and federal regulations. Those provisions unambiguously show that Lowe's Home Centers, LLC (Lowe's) is entitled to retail sales tax credits and Business and Occupation (B&O) tax deductions based on payments it made as the guarantor of debt obligations arising from Lowe's credit card accounts. Accordingly, I dissent.[12]

A.      BACKGROUND

Lowe's had agreements with GE Capital Financial Inc. and Monogram Credit Bank of Georgia (collectively the Banks) to issue Lowe's credit cards. The Banks entered into credit agreements with customers, who used the credit cards to make purchases at Lowe's stores. The Banks paid Lowe's for the amount of the purchases, including any sales tax and related B&O tax. The Banks then collected the amounts of the purchases from the customers.

Some of the customers defaulted on their credit card obligations, resulting in bad debts for the Banks. The bad debts included the amounts of sales taxes and B&O taxes the Banks had paid to Lowe's. Under its agreements with the Banks, Lowe's acted as the guarantor of those bad debts up to a capped amount. In other words, Lowe's had a contractual obligation to pay the Banks the amount of the Banks' bad debt losses, which included sales taxes and B&O taxes.

Lowe's claimed sales tax credits and B&O tax deductions for the payments it made as the guarantor of the Banks' bad debts. Lowe's also deducted those losses on its federal income tax returns. The Department of Revenue disallowed all credits and deductions relating to the payments Lowe's made as the guarantor of the Banks' bad debts.

_____

[12] However, I agree with the majority's equal protection and due process analysis.

B.      CREDIT/DEDUCTION FOR GUARANTOR'S PAYMENT OF BAD DEBTS

RCW 82.08.037(1) states, "A seller is entitled to a credit or a refund for sales taxes previously paid on bad debts, as that term is used in 26 U.S.C. Sec. 166." Regarding B&O taxes, RCW 82.04.4284(1) states, "In computing tax there may be deducted from the measure of tax bad debts, as that term is used in 26 U.S.C. Sec. 166 . . . on which tax was previously paid." Former WAC 458-20-196(1)(c) clarifies that "Washington credits, refunds, and deductions for bad debts are based on *federal standards for worthlessness* under section 166 of the Internal Revenue Code." (Emphasis added.)

26 U.S.C. § 166(a)(1) states, "There shall be allowed as a deduction any debt which becomes worthless within the taxable year." The federal standards of worthlessness are set forth in 26 C.F.R. § 1.166.

The controlling federal regulation here is 26 C.F.R. § 1.166-9(a), which applies to taxpayers who enter into an agreement to act as a guarantor of a debt obligation. The regulation states that a taxpayer's payment "in discharge of part or all of the taxpayer's obligation as a guarantor . . . is treated as a business debt becoming worthless." 26 C.F.R. § 1.166-9(a). Subsection (d) of that regulation states that a guarantor's payment of an obligation is treated as a worthless debt only if the agreement was entered into in the course of the taxpayer's business, the taxpayer had an enforceable legal duty to make the payment, and the agreement was entered into before the obligation became worthless. 26 C.F.R. § 1.166-9(d).

Under the plain language of these provisions, Lowe's was entitled to a sales tax credit and a B&O tax deduction for the payments it made on the Banks' bad debts. Lowe's payments were made to discharge the obligation Lowe's had as the guarantor of those bad debts, and therefore under 26 C.F.R. § 1.166-9(a) those payments are treated as worthless debts for

32

purposes of 26 U.S.C. § 166. Lowe's also met the requirements of 26 C.F.R. § 1.166-9(d). And because those guaranteed payments constitute bad debts as that term is used in 26 U.S.C. § 166, Lowe's is entitled to a sales tax credit under RCW 82.08.037(1) and a B&O tax deduction under RCW 82.04.4284(1).

The majority believes that the plain language of these provisions does not control for three reasons. But these reasons reflect a misunderstanding of the applicable law.

First, the majority focuses on the statement in RCW 82.08.037(1) that a credit is allowed for "sales tax previously paid" on bad debts and the statement in RCW 82.04.4284(1) allowing deduction for bad debts "on which tax was previously paid." The majority claims that Lowe's did not previously pay any sales taxes or B&O taxes relating to the Banks' credit card bad debts because Lowe's received reimbursement for those taxes from the Banks.

However, the Banks' credit card bad debts for which Lowe's acted as guarantor *included sales taxes and B&O taxes*. Lowe's *initially* received reimbursement for sales taxes and B&O taxes. But because of the guarantee, that reimbursement was negated and Lowe's became responsible for the amounts of the sales taxes and B&O taxes relating to the bad debts.

Second, the majority relies on *Home Depot USA, Inc. v. Department of Revenue*, 151 Wn. App. 909, 215 P.3d 222 (2009), to hold that Lowe's cannot obtain a sales tax credit because its guarantee payments were not directly attributable to retail sales. *Id.* at 914. In *Home Depot*, General Electric Capital Corporation (GECC) issued Home Depot credit cards. *Id*. at 913. When a Home Depot customer used the credit card to make a purchase, GECC would reimburse Home Depot for the amount of the purchase, including retail sales taxes. However, deducted from those reimbursement payments was what the parties characterized as a "service fee," which was an amount based on a complex economic analysis that considered a number of factors,

including expected losses from uncollectable debts. *Id*. at 914. Home Depot sought a sales tax refund for the sales taxes it paid on defaulted transactions made on Home Depot credit cards. *Id*. at 912-13.

This court affirmed the Department of Revenue's denial of Home Depot's sale tax refund claim. *Id*. at 912. However, the key facts in *Home Depot* are completely different than the facts in this case. Most significantly, there was no agreement in which Home Depot agreed to act as the guarantor of GECC's bad debts. Instead, there was no question that GECC was completely responsible for those debts, and in fact GECC – not Home Depot – took a bad debt deduction on its federal income tax returns. *Id*. at 913. Therefore, unlike here, 26 U.S.C. § 166(a)(1) and 26 C.F.R. § 1.166-9(a) were inapplicable.

Home Depot argued that it actually suffered the loss for GECC's bad debts because the bad debt expenses were factored into the service fee that Home Depot paid. *Id*. at 923. The court rejected that argument, stating that the existence of some economic loss relating to another party's bad debts does not allow a tax refund under RCW 82.08.037. *Id*. at 923-24. But the court's holding is inapplicable here because Lowe's did not merely suffer some economic loss relating to the Banks' bad debts. Unlike Home Depot, Lowe's was the *guarantor* of the Banks' bad debt losses.

The analysis and holding in *Home Depot* is inapplicable here because Home Depot did not guarantee GECC's bad debts. Lowe's did guarantee the Banks' bad debts, and those guarantee payments are the "bad debts" under 26 C.F.R. § 1.166-9(a) allowing for a sales tax credit under RCW 82.08.037(1) and a B&O tax deduction under RCW 82.04.4284(1).

Third, the majority contends that Lowe's cannot claim a sales tax credit or a B&O tax deduction because it did not write off the bad debt as uncollectable on its books. The majority

believes that writing off the bad debt as uncollectable on a taxpayer's books is a requirement for the sales tax credit and B&O tax refund under WAC 458-20-196.

The majority misreads WAC 458-20-196, which does not contain any such requirement. Former WAC 458-20-196(2)(a) states the general rule that sellers are entitled to a sales tax credit for taxes previously paid on bad debts under 26 U.S.C. § 166. That subsection then states, "Taxpayers may claim the credit or refund for the tax reporting period in which the bad debt is written off as uncollectible in the taxpayer's books." Former WAC 458-20-196(2)(a). This provision simply states *when* a taxpayer can claim a credit or refund; it does not somehow create a new requirement for claiming the credit or refund. Neither RCW 82.08.037, 26 U.S.C. § 166(1), nor related regulations contain such a requirement.[13]

In any event, WAC 458-20-196 clearly does not address the situation where the taxpayer's bad debt is a payment made as the guarantor of another person's debt obligation. A guarantor would not necessarily write off the other person's bad debt as uncollectible on its books. However, Lowe's presented evidence that its books and records did reflect the guarantee payments it had made, which should be sufficient to determine *when* Lowe's could claim the credit/deduction.

C.     CONCLUSION

Lowe's made payments to the Banks as the guarantor of the Banks' bad debts relating to the Lowe's credit cards, and those payments included amounts for sales taxes and B&O taxes. Under federal law, those guarantee payments constituted bad debts. And under RCW

---

[13] The same analysis applies for a B&O tax deduction. Former WAC 458-20-196(3)(a), relating to B&O taxes, contains language nearly identical to subsection (2)(a).

82.08.037(1) and RCW 82.04.4284(1), Lowe's was entitled to a sales tax credit and a B&O tax

deduction for those bad debts.  I dissent from the majority's contrary holding.

_____
MAXA, C.J.